UNITED STATES of America, Appellee,

v.

Ulysses LLOYD, Appellant.

No. 93–4093.

United States Court of Appeals,
Eighth Circuit.

Submitted May 13, 1994.

Decided Sept. 29, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied Nov. 10, 1994.

Mark Nyvold, St. Paul, MN, argued, for appellant.

Jon M. Hopeman, Minneapolis, MN, argued, for appellee.

Before RICHARD S. ARNOLD, Chief Judge, ROSS, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

ROSS, Senior Circuit Judge.

Appellant Ulysses Lloyd was convicted by a jury of various drug and weapons offenses, including possession with an intent to distribute crack cocaine, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(iii), and using or carrying a firearm during and in relation to a drug trafficking offense, 18 U.S.C. § 924(c)(1). For reversal of his conviction, appellant argues the district court [1] erred in refusing to suppress evidence that was obtained in violation of his Fourth Amendment rights. We affirm.

On the evening of December 20, 1992, Officers Cottingham and Abbas were fueling their squad car when a man approached them and informed Abbas that he had encountered several black men with machine guns, shotguns, handguns and drugs in the lower level of a nearby apartment complex. He claimed the men threatened to kill him if he did not leave immediately. The man identified the apartment building as a three-story building and described its location. The officers did not know the man and did not question his identity.

Only minutes after receiving this tip, the officers arrived in the alley at the rear of the apartment building. They found only one three-story building on the block and entered through an unlatched security door at the rear of the apartment building. The officers observed that the building layout was identical to that described by the witness and they proceeded to walk the length of the lower hallway with their weapons drawn. As the officers came upon apartment number two, a black man, later identified as Michael Covington, emerged. Officer Cottingham, who was approximately four feet from Covington, pointed his gun and commanded, "police offi-

1. The Honorable Diana E. Murphy, Chief Judge, United States District Court for the District of Minnesota.

cer, put your hands up." According to the officers, Covington did not immediately comply, but instead began to retreat into the apartment. Cottingham reacted by grabbing Covington's shoulder with his left hand and pulling at Covington as he was retreating into the apartment. Covington's momentum appears to have caused Officer Cottingham to fall forward in front of the doorway, without actually entering the apartment. The officer then had a view into the apartment through the open doorway, where he saw appellant Lloyd holding what appeared to be a machine gun or an assault rifle. Lloyd was ordered to drop his weapon and come out of the apartment.

The magistrate judge initially concluded that Covington was arrested without probable cause at the moment the officer pointed his gun and ordered Covington to put his hands up. The magistrate judge recommended that the trial court suppress all evidence seized from the apartment. The district court rejected the magistrate judge's recommendation, however, finding that the officer's attempt to stop Covington was a permissible investigatory stop under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Appellant argues on appeal that the police encounter with Covington amounted to an arrest without probable cause and, accordingly, the evidence seized from the apartment should be suppressed. We review questions of seizure de novo and the district court's finding of reasonable suspicion will not be reversed absent clear error. *United States v. Willis,* 967 F.2d 1220, 1223 (8th Cir.1992).

In order to conduct an investigatory stop, police must have a reasonable, articulable suspicion that a crime has been or is being committed and need not possess the probable cause necessary to make a full arrest. *Terry v. Ohio,* 392 U.S. at 21, 88 S.Ct. at 1879; *United States v. Raino,* 980 F.2d 1148, 1149 (8th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1662, 123 L.Ed.2d 280 (1993). In the present case, an individual had just informed the officers that he had been threatened with his life by persons car-

rying firearms. Although the appellant claims that this individual was anonymous, the witness spoke directly to the officers who were in a position to evaluate the credibility of the information provided. The officers decided the story carried enough reliability for them to investigate further. The record shows that the building was located where the witness had described and it was the only three-story building on the block. They immediately noticed that the security door to the rear of the apartment complex was unlatched, allowing the entrance of possible intruders.

When Covington suddenly emerged from the apartment, the officer pointed his weapon at him and commanded him to put his hands up. Because the officers were investigating a tip that several men with guns had threatened an individual in this apartment building, the officers acted reasonably when they brandished their guns upon encountering Covington. This act did not transform the otherwise valid *Terry* stop into an arrest. *See United States v. Jones,* 759 F.2d 633, 638 (8th Cir.), *cert. denied,* 474 U.S. 837, 106 S.Ct. 113, 88 L.Ed.2d 92 (1985).

Instead of complying with the officer's order to stop, however, Covington began to retreat into the apartment. When Officer Cottingham grabbed Covington as he began to withdraw, the officer was pulled into view of the open doorway and observed the appellant standing with what appeared to be a machine gun in his hands. We have held that what is visible through an open door is in plain view and not subject to Fourth Amendment protection. *United States v. Peters,* 912 F.2d 208, 210 (8th Cir. 1990), *cert. denied,* 498 U.S. 1094, 111 S.Ct. 981, 112 L.Ed.2d 1066 (1991). After the door is open a search does not occur just because an officer looks into the room through the open doorway. *Id.*

Based on the foregoing, we conclude that the officers executed a valid *Terry* stop and, accordingly, the district court did not err in

refusing to suppress the evidence. The judgment of the district court is affirmed.[2]

---

2. While we base our decision on the validity of the *Terry* stop, we note the decision could have also rested on the conclusion that appellant has no standing to argue that his Fourth Amendment rights were violated as a result of Covington's unlawful arrest. *See Rakas v. Illinois,* 439 U.S. 128, 134, 99 S.Ct. 421, 425, 58 L.Ed.2d 387 (1978); *United States v. Bell,* 651 F.2d 1255, 1258 (8th Cir.1981); *United States v. Kinsey,* 843 F.2d 383, 390 (9th Cir.), *cert. denied,* 487 U.S. 1223, 108 S.Ct. 2882, 101 L.Ed.2d 916 (1988); *United States v. Tolliver,* 780 F.2d 1177, 1185 (5th Cir.1986), *rev'd on other grounds,* 479 U.S.

1074, 107 S.Ct. 1267, 94 L.Ed.2d 128 (1987). However, because we conclude that the officers' actions were constitutionally permissible in all respects, we need not address other bases to support our decision.