**STATE of Minnesota, Appellant,**

v.

**Nikia Kylene BALENGER, Respondent.**

No. C8–02–2152.

Court of Appeals of Minnesota.

Aug. 4, 2003.

Mike Hatch, Attorney General, St. Paul, and Jay M. Heffern, Minneapolis City Attorney, Michelle M. Jacobson, Assistant City Attorney, Minneapolis, for appellant.

Phillip S. Resnick, Resnick & Associates, PLLP, Minneapolis, for respondent.

Considered and decided by WILLIS, Presiding Judge, HUSPENI, Judge,* and FORSBERG, Judge.*

## O P I N I O N

WILLIS, Judge.

After receiving a tip that respondent Nikia Balenger had just pointed a gun at another person, police approached Balenger and seized her by grabbing the back of her jersey and forcing her to stop. During the seizure, a gun fell from Balenger's person. The state charged Balenger with carrying a weapon without a permit, in violation of Minn.Stat. § 624.714, subd. 1(a) (2000). On appeal from an order suppressing evidence of the gun and dismissing the complaint, the state argues that the district court erred in concluding that the police exceeded the scope of a legitimate investigative stop by grabbing Balenger's jersey. Because we conclude that the court erred, we reverse and remand for further proceedings.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

## FACTS

At 1:20 a.m. on September 2, 2002, Minneapolis Police Officer Jeffrey Peterson was assisting with crowd control at the intersection of Fifth Street and Hennepin Avenue, when a female tapped him on the shoulder and told him that a person wearing a hat and an L.A. Lakers jersey had just pointed a gun at her friend. The tipster pointed at respondent Nikia Balenger and identified her as the person who had pointed the gun. The tipster then left the area before Officer Peterson had a chance to ask her any questions about her identity.

Officer Peterson reported the tip to his partner and began walking toward Balenger while radioing the information he had received to other officers in the area. Officer Peterson testified that as he approached Balenger, he saw her hands tucked under her jersey by her waist and that, based on his training and experience, he suspected that Balenger was hiding a gun.

In the meantime, Officer Scott Taylor, who had received Officer Peterson's call, saw Balenger walking across the street and began following her. He testified that (1) he could not see Balenger's hands but noticed that she was carrying a purse; (2) he called several times for Balenger to stop, saying, "Ma'am, stop," but Balenger continued walking briskly toward a crowded pizza restaurant; (3) the last time he commanded Balenger to stop he was within one or two feet of her; (4) concerned that Balenger posed a risk both to the public and to himself, he grabbed the back of her jersey and pulled her back just before she reached the restaurant's front door; (5) as he did so, he heard the sound of metal hitting the ground and saw a gun at Balenger's feet; and (6) there were no other people directly in front of the restaurant when he grabbed Balenger. Officer Peterson, who had seen the gun come "flying out," testified that he ran to secure it while his partner handcuffed Balenger. The officers determined that the gun was loaded and arrested Balenger.

The state charged Balenger with carrying a weapon without a permit, in violation of Minn.Stat. § 624.714, subd. 1(a) (2000). Balenger moved to suppress evidence of the gun, challenging the constitutionality of the stop. The court granted Balenger's motion and dismissed the complaint, ruling that although the tip was sufficiently reliable to justify an investigative stop and even a frisk, once Officer Taylor grabbed Balenger's jersey, he exceeded the scope of an investigative stop and "seized" Balenger without probable cause. By concluding that probable cause was necessary to justify Officer Taylor's conduct, the district court appears to have used the term "seizure" to mean "arrest."

The court noted on the record at the hearing that although the anonymous tip contained sufficient indicia of reliability to justify an investigative stop, the officers observed no independent criminal activity or furtive glances to justify "seizing" Balenger. The court discredited Officer Taylor's testimony that Balenger's hand was tucked under her jersey, giving him reason to believe that she was concealing something. The court also found that Balenger might not have heard Officer Taylor's command to stop. In its written order, the court specifically found that Officer Taylor's testimony that he asked Balenger to stop was not credible because Officer Taylor was confused about the location of the pizza restaurant and stated that there were no other people in front of the restaurant when he stopped Balenger.

This appeal follows the court's order suppressing the gun and dismissing the complaint.

## ISSUES

I. Did Officer Taylor have a reasonable suspicion of criminal activity sufficient to justify an investigative stop of Balenger?

II. Did Officer Taylor transform an otherwise legitimate investigative stop into an arrest by grabbing the back of Balenger's jersey and forcing her to stop?

## ANALYSIS

■ When reviewing pretrial orders on motions to suppress evidence, this court independently reviews the facts to determine, as a matter of law, whether the district court erred by suppressing, or not suppressing, the evidence. *State v. Harris*, 590 N.W.2d 90, 98 (Minn.1999).

■ The Fourth Amendment protects "the right of the people to be secure * * * against unreasonable searches and seizures." U.S. Const. amend. IV; *see also* Minn. Const. art. I, § 10 (guaranteeing the right of people to be secure against unreasonable searches and seizures). A seizure occurs when, under the totality of the circumstances, a reasonable person would conclude that he or she is not free to leave. *In re Welfare of E.D.J.*, 502 N.W.2d 779, 783 (Minn.1993) (rejecting, in the exercise of its independent authority to interpret the state constitution, the U.S. Supreme Court's determination that a seizure occurs only when police use physical force to restrain a person or when a person physically submits to show of authority by police,

and holding that juvenile was seized when police asked him to stop).

■ The state concedes that Officer Taylor seized Balenger when he grabbed the back of her jersey and forced her to stop, but it argues that the seizure was reasonable. Whether such a seizure, known as an investigative or *Terry* stop, is reasonable depends on (1) whether the stop was justified "at its inception" and (2) whether the actions of the police were reasonably related in scope to the circumstances that justified the stop in the first place. *Terry v. Ohio*, 392 U.S. 1, 19–20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968).

### I.

■ The district court concluded that the anonymous tip in this case was sufficiently reliable to justify the stop. Balenger argues, however, that the tip was insufficiently reliable because it was based on uncorroborated information provided by an anonymous tipster.[1] We disagree.

■ An investigative stop is justified when the police can point to specific and articulable facts that, together with rational inferences drawn from those facts, create reasonable suspicion of criminal activity. *Terry*, 392 U.S. at 21, 88 S.Ct. at 1880. The suspicion must exist at the inception of the stop. *Olson v. Comm'r of Pub. Safety*, 371 N.W.2d 552, 556 (Minn.1985) (stating that "fourth amendment protection applies at the time the police intrusion

---

1. At oral argument, the state argued that Balenger waived consideration of whether the tip was sufficiently reliable to justify the stop by not filing a notice of review. But the supreme court has held that a respondent may raise alternative arguments on appeal to defend a decision or judgment, without filing a cross-appeal, provided that "there are sufficient facts in the record for the appellate court to consider the alternative theories, there is legal support for the arguments, and

the alternative grounds would not expand the relief previously granted." *State v. Grunig*, 660 N.W.2d 134, 137 (Minn.2003). Here, there are sufficient facts in the record for us to consider Balenger's alternative argument that the tip was not sufficiently reliable to justify the stop, there is legal support for the argument, and the argument would not expand the relief granted. Accordingly, the argument is properly before this court.

is undertaken and is not to be judged by what the police learn after the intrusion").

■ Ordinarily, uncorroborated anonymous tips provided by private citizens are sufficient to justify an investigative stop because the reliability of the tipster may be presumed. *Marben v. State, Dep't of Pub. Safety*, 294 N.W.2d 697, 699 (Minn. 1980) (concluding that CB radio communication from unidentified trucker was sufficient to support investigative stop of car, even though trooper saw nothing improper in operation of car, because trucker was private citizen and his reliability could be presumed); *State v. Siegfried*, 274 N.W.2d 113, 115 (Minn.1978) (concluding that first-time citizen informer's credibility is generally presumed); *see also State v. Lindquist*, 295 Minn. 398, 400, 205 N.W.2d 333, 335 (1973) (considering fact that tipster was first-time private citizen informer not involved in the criminal event himself in assessing reliability of tip).

Similarly, uncorroborated anonymous tips provided to police face to face are sufficiently reliable to justify an investigative stop, because the tipster puts himself in a position where his identity might be traced, and he might be held accountable for providing any false information. *State v. Davis*, 393 N.W.2d 179, 181 (Minn.1986) (holding that tip provided by female passenger who leaned out of car window and, motioning to only car in view, shouted that car had just run red light was sufficiently reliable to justify investigative stop, even though officer did not see any improper driving before stopping suspect car); *see also United States v. Lloyd*, 36 F.3d 761, 763 (8th Cir.1994) (holding that anonymous tip that several men were holding guns and drugs in lower level of nearby apartment complex was sufficiently reliable to justify further investigation where "witness spoke directly to the officers who were in a position to evaluate the credibility of the information provided").

■ Some federal courts have concluded that officers receiving an anonymous tip that a person is armed are almost invariably justified in conducting an investigative stop. *See, e.g., United States v. DeBerry*, 76 F.3d 884, 886 (7th Cir.1996) (stating that "as a realistic matter [a tip that a person is armed] will require a stop in all cases"). *But see United States v. McLeroy*, 584 F.2d 746, 748 (5th Cir.1978) (holding stop unreasonable where tip indicated that defendant might be in possession of sawed-off shotgun). The element of imminent danger distinguishes a tip that a person is armed from one involving, for example, the possession of drugs. *See United States v. Clipper*, 973 F.2d 944, 951 (D.C.Cir.1992) (stating that when guns are involved, an attempt to wait out the suspect might have fatal consequences). To stop a person suspected of being armed, officers "need not be absolutely certain that [an] individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry*, 392 U.S. at 27, 88 S.Ct. at 1883.

The anonymous tip in this case was provided face to face to police by a private citizen and was, therefore, sufficiently reliable to justify an investigative stop. *See Davis*, 393 N.W.2d at 181; *Marben*, 294 N.W.2d at 699. Officer Taylor did not have to be certain that Balenger was armed because the circumstances warranted his belief that his safety and the safety of others was threatened. The district court correctly concluded that the anonymous tip justified a stop of Balenger.

## II.

■ The state argues that because the intrusion on Balenger's Fourth Amend-

ment rights was both minimal and justified by a "compelling public interest" in gun control, the district court erred in concluding that Officer Taylor transformed an otherwise legitimate investigative stop into an unlawful arrest by grabbing the back of Balenger's jersey.

■■■■■ To be reasonable under the Fourth Amendment, an investigative stop must be limited in scope and duration to its initial justification. *Terry*, 392 U.S. at 19–20, 88 S.Ct. at 1879. In determining the propriety of a stop's scope and duration, courts must balance the nature and degree of the intrusion on an individual's Fourth Amendment rights against the governmental interest in crime prevention and legitimate concerns about the safety of law-enforcement officers. *See Washington v. Lambert*, 98 F.3d 1181, 1185 (9th Cir. 1996). The courts must also consider the totality of the circumstances and judge the facts against an objective standard, namely, whether the facts available to the officer at the moment of the stop would cause a person of reasonable caution to believe that the action taken was appropriate. *United States v. Tilmon*, 19 F.3d 1221, 1224 (7th Cir.1994).

■■■■■ There is no bright-line test separating a legitimate investigative stop from an unlawful arrest. *See Graham v. Connor*, 490 U.S. 386, 396–97, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989) (stating that police officers faced with fluid situations are permitted to graduate their responses to the demands of the particular circumstances confronting them). Instead, "common sense and ordinary human experience must govern over rigid criteria." *United States v. Sharpe*, 470 U.S. 675, 685, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985); *see also United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981) (stating that process deals with probabilities

rather than hard certainties). In determining whether a police officer's conduct turned an investigative stop into an unlawful arrest, courts must specifically consider the aggressiveness of the police methods and the intrusiveness of the stop against the justification for the use of such tactics, i.e., whether the officer had a sufficient basis to fear for his or her safety. *Lambert*, 98 F.3d at 1185.

■■■■ Unduly intrusive police conduct may, but does not automatically, transform an otherwise legitimate investigative stop into an unlawful arrest. *See generally* 4 Wayne R. LaFave, *Search and Seizure* § 9.2(d) (3d ed.1996). Indeed, the trend has been to "grant[ ] officers greater latitude in using force in order to 'neutralize' potentially dangerous suspects during an investigatory [stop]." *United States v. Perdue*, 8 F.3d 1455, 1464 (10th Cir.1993). Thus, the use of force reasonable under the circumstances will be permitted without a showing of probable cause when force is necessary for the protection of the investigating officers and the degree of force used is reasonable. *See State v. Nading*, 320 N.W.2d 82, 84 (Minn.1982) (holding that under totality of circumstances, fact that police ordered suspected burglars thought to be armed and dangerous to get out of car and lie on the ground did not convert a temporary detention into an arrest); *see also Perdue*, 8 F.3d at 1462–63 (holding that police officers were justified in approaching suspects with their guns drawn, where suspects were reported to be armed and dangerous); *United States v. Smith*, 3 F.3d 1088, 1094–95 (7th Cir.1993) (holding that the handcuffing of suspect did not turn legal investigative stop into an arrest); *Courson v. McMillian*, 939 F.2d 1479, 1495–96 (11th Cir.1991) (holding that deputy sheriff did not transform investigative stop into arrest when he required suspect to lie on ground while he

pointed shotgun at her and her companions, when suspects were uncooperative and did not respond to officer's commands right away). And the use of reasonable force is almost invariably justified in cases involving persons suspected of being armed. *See, e.g., Lloyd,* 36 F.3d at 763 (holding that police were justified in brandishing their guns while investigating a tip that armed men had threatened an individual); *Tilmon,* 19 F.3d at 1227 (holding handcuffing reasonable where officers told by radio dispatch that suspect was armed and dangerous).

The district court concluded that by grabbing the back of Balenger's jersey, Officer Taylor exceeded the scope of an otherwise lawful investigative stop. The court based its conclusion on its findings that (1) the officers observed no criminal activity or furtive glances; (2) Officer Taylor's testimony that he commanded Balenger to stop was not credible; and (3) if Officer Taylor commanded Balenger to stop, she might very well not have heard it because the streets were crowded and it is unlikely that Balenger was the only person in front of the pizza restaurant.

Admittedly, both an officer's personal observations of criminal behavior and a suspect's refusal to stop when ordered to do so are important factors in determining whether the police exceeded the scope of an investigative stop. *See United States v. Weaver,* 8 F.3d 1240, 1244 (7th Cir.1993) (holding that tackling of suspect by police officers did not exceed bounds of permissible investigative stop where suspect took evasive action immediately upon encountering police, broke free and ran after officer grabbed his jacket, and ignored officer's requests to stop); *Tom v. Voida,* 963 F.2d 952, 957–58 (7th Cir.1992) (stating that suspect cannot complain that police took forcible steps to detain him when suspect's own evasive actions create the need for those steps). But when the use of force is otherwise reasonable in light of the totality of the circumstances, whether an officer observed criminal behavior or a suspect refused to stop is not determinative. In this case, the use of force was reasonable, even if, as the district court found, the officers observed no criminal behavior and either Officer Taylor did not command Balenger to stop or Balenger did not hear the command.

Based on the information Officer Peterson had provided him, Officer Taylor harbored an objectively reasonable belief that Balenger was armed and had committed a criminal offense by pointing a gun at someone, and he took reasonable steps to protect himself and others. The amount of force he used when grabbing Balenger's jersey was minimal and was not more intrusive than necessary under the circumstances to effectuate the stop. *Cf. Florida v. Royer,* 460 U.S. 491, 504, 103 S.Ct. 1319, 1328, 75 L.Ed.2d 229 (1983) (holding that officers' conduct was more intrusive than necessary to effectuate investigative detention where officers stopped person suspected of transporting drugs, seized his airline ticket and driver's license, and asked him to accompany them to interrogation room adjacent to airport concourse); *Gallegos v. City of Colorado Springs,* 114 F.3d 1024, 1031–32 (10th Cir.1997) (holding that officers acted reasonably in response to perceived threat to their safety and did not escalate *Terry* stop into unlawful arrest by applying arm-bar maneuver and taking down 200–pound suspect after he crouched down and assumed wrestler's position). In addition, grabbing Balenger's jersey was the least intrusive means available to Officer Taylor reasonably to protect his safety and the safety of others. *See Royer,* 460 U.S. at 500, 103 S.Ct. at 1325–26 (stating that police should use the least intrusive means reasonably available

to verify or dispel their suspicions in a short period of time). Even if Officer Taylor could have executed the stop through a less intrusive means, however, his actions were reasonable. *See Cady v. Dombrowski*, 413 U.S. 433, 447, 93 S.Ct. 2523, 2531, 37 L.Ed.2d 706 (1973) (stating that fact that officers' and public's safety might be accomplished by less intrusive means does not, by itself, render search unreasonable).

■ Although grabbing an individual and forcing him or her to halt may elevate an investigative stop into an arrest in other scenarios, in this case it was reasonable as a means of neutralizing Balenger's potential danger. The Fourth Amendment does not require that officers unnecessarily risk their lives when encountering a suspect they reasonably believe is armed and dangerous. *Perdue*, 8 F.3d at 1463. Nor does it "require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape." *State v. Cavegn*, 294 N.W.2d 717, 721 (Minn.1980) (quotation omitted). On the contrary, "*Terry* recognizes that it may be the essence of good police work to adopt an intermediate response." *Id.* (quotation omitted). Here, Officer Taylor did just that. He made a split-second judgment as Balenger was rapidly approaching the front door of a crowded restaurant and opted to grab her rather than allow her to walk into the restaurant with a gun. *See Graham*, 490 U.S. at 396–97, 109 S.Ct. at 1872 (stating that determination of reasonableness must take into account that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving"). This court will not engage in second-guessing. *See Sharpe*, 470 U.S. at 686, 105 S.Ct. at 1575 (stating that in

assessing reasonableness of police's conduct courts should "take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing").

Because Officer Taylor harbored a reasonable suspicion that Balenger was armed, reasonably feared for his safety and the safety of the public at large, and used an amount of force that was proportionate to the initial justification for the stop, his actions were reasonable and did not transform an investigative stop into an unlawful arrest.

## DECISION

The district court erred by granting Balenger's motion to suppress and dismissing the complaint.

**Reversed and remanded.**