*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0513**

State of Minnesota,
Respondent,

vs.

Michael James Parkin,
Appellant.

**Filed December 7, 2015
Affirmed
Hooten, Judge**

Beltrami County District Court
File No. 04-CR-14-900

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Annie P. Claesson-Huseby, Beltrami County Attorney, Kristal Kadrie, Assistant County Attorney, Bemidji, Minnesota (for respondent)

Maury D. Beaulier, Beaulier Law Office, St. Louis Park, Minnesota (for appellant)

Considered and decided by Reyes, Presiding Judge; Hooten, Judge; and Kirk, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HOOTEN**, Judge

Appellant challenges the denial of his pretrial motion to suppress evidence, arguing that he was subjected to an unreasonable seizure.  We affirm.

# FACTS

At 1:30 a.m. on March 23, 2014, Deputy Martin Gack was called to Slim's Bar and Grill to investigate a hit-and-run car accident. There, he met with the owner of a vehicle, who reported that when he left Slim's to warm up his vehicle, he found that his vehicle, which had been parked in Slim's parking lot, had been hit. Deputy Gack observed that the vehicle had been damaged and there was white paint in the damaged area, which indicated to Deputy Gack that a white vehicle had hit the subject vehicle. Then, another person, who wanted to remain anonymous, approached Deputy Gack and volunteered that the subject vehicle had been struck by a 2009 Chevy truck with a welder in the truck bed. While refusing to say whether he had witnessed the accident, the person advised Deputy Gack that the truck was driven by appellant Michael James Parkin, who lived on Birchmont Drive and had a for-sale sign posted on a tree at his home.

Based on this information, Deputy Gack searched for Parkin in a driver's license and vehicle database and discovered that Parkin owned a white 2009 Chevy truck. Deputy Gack drove to Birchmont Drive, and, as he patrolled the area, saw a white Chevy truck with an object in the truck bed parked in the driveway of a residence that had a for-sale sign posted on a tree in the front lawn. Deputy Gack parked his squad car in front of the residence with the emergency lights off and approached the driveway where the truck was parked. As Deputy Gack approached, he observed that the object in the truck bed was a welder. At about the same time, he observed a man come out of the house, go to the driver's side of the truck, open and close the door, and then start walking back to the house. Deputy Gack was able to identify the man as Parkin from his driver's license

2

photo that Deputy Gack had viewed before arriving at the residence. As Parkin was going back into the house, Deputy Gack called out to him to get his attention and said, "Hello. (pause) Hello. (pause) Hey. (pause) Sheriff's office." In response, Parkin stopped walking. Deputy Gack then told Parkin that he was there to investigate the hit-and-run accident, and Parkin admitted that he had hit the vehicle in Slim's parking lot. While they were talking, Deputy Gack smelled alcohol on Parkin and noticed that he had slurred speech. Parkin refused to undergo field sobriety tests, but consented to a preliminary breath test, which he failed. Deputy Gack arrested Parkin for driving while intoxicated and read him the implied consent advisory. But, after Parkin was unable to submit to a breath test to determine his alcohol concentration, he refused to cooperate with Deputy Gack's request for chemical testing.

The state charged Parkin with second-degree refusal to submit to chemical testing in violation of Minn. Stat. § 169A.25, subd. 1(b) (2012). Parkin moved to suppress evidence on the basis that he was subjected to an unreasonable seizure. The district court denied Parkin's motion. Pursuant to Minn. R. Crim. P. 26.01, subd. 4, Parkin agreed to a stipulated evidence court trial in order to preserve the suppression issue for appellate review. The district court found him guilty. Parkin appeals.

## D E C I S I O N

Parkin argues that the district court erred by denying his pretrial motion to suppress evidence because he was unconstitutionally seized. The Fourth Amendment of the United States Constitution and article I, section 10 of the Minnesota Constitution protect "[t]he right of the people to be secure in their persons, houses, paper, and effects,

3

against unreasonable searches and seizures." "Not all encounters between the police and citizens constitute seizures." *State v. Harris*, 590 N.W.2d 90, 98 (Minn. 1999). A seizure occurs when an officer has restrained the liberty of a citizen with physical force or show of authority. *Id.* "In other words, officers must not convey a message that compliance with their request is required." *Id.* (quotation omitted). "Under the Minnesota Constitution, a person has been seized if in view of all the circumstances surrounding the incident, a reasonable person would have believed that he or she was neither free to disregard the police questions nor free to terminate the encounter." *Id.* (quotation omitted). Circumstances that may indicate that a seizure has occurred include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Id.* (quotation omitted). "A person generally is not seized merely because a police officer approaches him in a public place . . . and begins to ask questions." *Id.* A seizure similarly does not occur "when a person, due to some moral or instinctive pressure to cooperate, complies with a request to search because the other person to the encounter is a police officer." *Id.* at 99 (quotations omitted).

"When reviewing pretrial orders on motions to suppress evidence, we may independently review the facts and determine, as a matter of law, whether the district court erred in suppressing—or not suppressing—the evidence." *Id.* at 98. When the facts are not in dispute, we determine whether a police officer's actions constituted a seizure and, if so, whether the officer articulated a sufficient basis for the seizure. *Id.*

4

Here, where there was no evidence of force or a show of authority when Deputy Gack approached Parkin to discuss the hit-and-run accident, there was no seizure. Deputy Gack was alone at night when he approached Parkin and the emergency lights on his squad car were off. Although Deputy Gack was in full uniform, he never drew his gun or touched Parkin. To get Parkin's attention, Deputy Gack called out, "Hello. (pause) Hello. (pause) Hey. (pause) Sheriff's office." Although Deputy Gack may have spoken more loudly than normal in order to get Parkin's attention, his tone did not indicate that compliance with his request was required. He was simply announcing his presence on the property and trying to get Parkin's attention because Parkin appeared not to see him as Deputy Gack walked up the driveway. Critically, Deputy Gack never ordered Parkin to stop. *See In re Welfare of E.D.J.*, 502 N.W.2d 779, 783 (Minn. 1993) (concluding that there clearly was a seizure once the police directed the defendant to stop). In view of the totality of these circumstances, a reasonable person would have believed that he or she was free to disregard the police questions and free to terminate this initial encounter.

Even if Deputy Gack's actions constituted a seizure, a seizure for investigatory purposes would have been reasonable under these facts. When a person is seized, courts must suppress evidence gathered from the seizure only if the seizure was unreasonable. *Harris*, 590 N.W.2d at 99. "The brief seizure of a person for investigatory purposes is not unreasonable if an officer has a particular and objective basis for suspecting the particular person [seized] of criminal activity." *Id.* (alteration in original) (quotations omitted). The officer may justify a seizure of a person based on the totality of the

5

circumstances, but a mere hunch does not justify a seizure. *Id.* The officer must be able to point to objectively reasonable articulable facts. *Id.*

"The factual basis required to support an investigatory stop is minimal. It need not arise from the personal observations of the police officer but may be derived from information acquired from another person." *Magnuson v. Comm'r of Pub. Safety*, 703 N.W.2d 557, 560 (Minn. App. 2005) (citation omitted). An officer can base an investigatory stop on an informant's tip if the tip has sufficient indicia of reliability. *In re Welfare of G.M.*, 560 N.W.2d 687, 691 (Minn. 1997). When an investigatory stop is based on an informant's tip, we focus on two factors: (1) the sufficiency of the identifying information provided by the informant and (2) the facts supporting the informant's assertion that the suspect was engaged in illegal behavior. *Rose v. Comm'r of Pub. Safety*, 637 N.W.2d 326, 328 (Minn. App. 2001), *review denied* (Minn. Mar. 19, 2002). Neither factor is independently dispositive, and determining whether an officer had reasonable suspicion to conduct an investigatory stop is based on the totality of the circumstances. *Id.*

When analyzing the first factor, we distinguish between anonymous and identifiable informants. *Id.* When an informant provides sufficient information to locate him and hold him accountable for giving false information, an officer is justified in presuming that the informant is truthful in identifying himself. *Id.* "An informant who provides sufficient identifying information is not anonymous, even if the informant does not provide a name." *Id.* Anonymous tips that are "provided to police face to face are sufficiently reliable to justify an investigative stop, because the tipster puts himself in a

6

position where his identity might be traced, and he might be held accountable for providing any false information." *State v. Balenger*, 667 N.W.2d 133, 138 (Minn. App. 2003), *review denied* (Minn. Oct. 21, 2003).

Here, Deputy Gack spoke with the anonymous informant face-to-face. Although the informant refused to give his name, Deputy Gack testified that he could describe the man's physical appearance and was sure that he could find out his name without difficulty. By speaking to Deputy Gack in person, the informant provided sufficient identifying information to Deputy Gack so that his "identity might be traced, and he might be held accountable for providing any false information." *Id.*

As to the second factor, the facts supporting the informant's assertion that the suspect was engaged in illegal behavior, the informant here provided specific facts about the hit and run. He identified not only the type of vehicle that hit the car but also the year and make, and he said that there was a welder in the bed of the truck. He identified Parkin as the driver, knew that Parkin lived on Birchmont Drive, and knew that there was a for-sale sign on a tree in the yard. Deputy Gack corroborated this information when he searched for Parkin in a database and discovered that Parkin owned a white 2009 Chevy truck. This information was further corroborated when Deputy Gack found a white Chevy truck with a welder in the truck bed at a Birchmont Drive residence that had a for-sale sign on a tree. Although the informant refused to say whether he witnessed the hit and run, the specificity of the details that he provided and Deputy Gack's corroboration of those details gave Deputy Gack sufficient information to reasonably suspect that Parkin was involved in the hit and run. Because the informant's tip had sufficient indicia

of reliability and gave Deputy Gack an objective basis for suspecting Parkin of being involved in a hit-and-run accident, Deputy Gack would have been justified in seizing Parkin for investigatory purposes had a seizure occurred.

**Affirmed.**