*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0615**

State of Minnesota,
Respondent,

vs.

Christopher Gary Zurek,
Appellant.

**Filed December 5, 2016
Affirmed
Stauber, Judge**

Hennepin County District Court
File No. 27-CR-14-22592

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Jeffrey A. Carson, Rogers City Attorney, David K. Ross, Assistant City Attorney, Carson, Clelland & Schreder, Brooklyn Center, Minnesota (for respondent)

Paul P. Sarratori, Mesenbourg & Sarratori Law Offices, P.A., Coon Rapids, Minnesota (for appellant)

Considered and decided by Worke, Presiding Judge; Stauber, Judge; and Bratvold, Judge.

# UNPUBLISHED OPINION

**STAUBER**, Judge

On appeal from his conviction of gross-misdemeanor driving under the influence (DUI), appellant argues that the district court erred by concluding that (1) his initial

contact with the arresting officer did not constitute a seizure and (2) even if it was a seizure, it was supported by the requisite reasonable articulable suspicion. We affirm.

**FACTS**

In August 2014, appellant Christopher Zurek was charged with two counts of third-degree DUI. Appellant subsequently moved to dismiss the charges, arguing that the results of his breath test should be suppressed because the officer's stop of appellant was not supported by the requisite reasonable articulable suspicion. Appellant also claimed that Minnesota's implied-consent advisory is unconstitutional.

At the omnibus hearing, evidence and testimony was presented establishing that on August 2, 2014, at approximately 6:30 p.m., Officer Jeffrey Madson was on routine patrol in Rogers. According to Officer Madson, he observed a silver pickup truck travel from southbound Main Street to westbound 147th Avenue and then turn left on to a dirt inlet or driveway that leads to private property on which several vacant buildings are located. Before he made the turn, the driver of the pickup stopped to talk to the driver of a limousine which was parked on the edge of 147th Avenue near the driveway entrance. The pickup then turned into the driveway that "goes into a field" and proceeded to "drive[] around in [the] grassy field" near the "old abandoned buildings."

Officer Madson testified that he drove to the area and asked the limousine driver if he needed assistance. The driver stated that he was "having electrical problems with his vehicle but would be out of the area momentarily." Officer Madson then asked the driver if he knew the driver of the pickup. The limousine driver stated that he did not, but that he noticed the "driver's speech was slurred a little bit" and that he smelled like alcohol.

2

After speaking with the limousine driver, Officer Madson drove around the limousine and parked his squad car on the dirt driveway "as the pickup truck was coming up over the hill towards [him]." According to Officer Madson, the dirt driveway was "wide enough for more than one car," and he was not parked in such a manner that "would block the egress or [appellant's] ability to get out of [the] area." Officer Madson then got out of his car and walked towards the pickup truck. Although the squad car lights were not turned on, the driver of the pickup stopped and Officer Madson identified the driver as appellant. In speaking with him, Officer Madson observed that appellant demonstrated several indicia of intoxication and appellant was arrested for DUI.

The district court denied appellant's motion to dismiss, concluding that Officer Madson's initial contact with appellant did not constitute a seizure. But the court also concluded that even if it was a seizure, it was supported by the requisite articulable suspicion based on (1) the officer's observation of appellant "driving off-road on private property near abandoned and vandalized buildings" and (2) the limousine driver's belief that appellant was intoxicated because he was slurring his speech and smelled of alcohol. Finally, the district court rejected appellant's challenges to Minnesota's implied-consent law. Following a trial on stipulated facts, the district court found appellant guilty of the charged offenses. This appeal followed.

## DECISION

"When reviewing pretrial orders on motions to suppress evidence, [appellate courts] may independently review the facts and determine, as a matter of law, whether the district court erred by suppressing—or not suppressing—the evidence." *State v. Harris*,

3

590 N.W.2d 90, 98 (Minn. 1999). We review the district court's findings of fact under a clearly erroneous standard, but its legal determinations are reviewed de novo. *State v. Bourke*, 718 N.W.2d 922, 927 (Minn. 2006).

Appellant argues that the district court erroneously concluded that (1) Officer Madson's initial contact with appellant did not constitute a seizure and (2) even if it was a seizure, it was supported by the requisite reasonable articulable suspicion.[1] But we need not reach the issue of whether appellant's initial contact with the officer constituted a seizure because we conclude, as did the district court, that even if Officer Madson's initial contact with appellant constituted a seizure, the seizure was supported by a reasonable articulable suspicion of criminal behavior.

The United States and Minnesota Constitutions prohibit unreasonable searches and seizures by the government. U.S. Const. amend IV; Minn. Const. art. I, § 10. When a person is seized, courts must suppress evidence gathered from the seizure only if the seizure was unreasonable. *Harris*, 590 N.W.2d at 99. "The brief seizure of a person for investigatory purposes is not unreasonable if an officer has a particular and objective basis for suspecting the particular person [seized] of criminal activity." *Id.* (alteration in original) (quotations omitted). Whether the police have reasonable suspicion to conduct an investigative seizure depends on the totality of the circumstances and a showing that

---

[1] Appellant also challenged the district court's rejection of his various constitutional challenges to Minnesota's implied-consent law. But appellant waived these challenges at oral argument in light of the United States Supreme Court's decision in *Birchfield v. North Dakota*, 136 S. Ct. 2160 (2016), which was released after appellant filed his appellate brief in this matter.

the stop was not "the product of mere whim, caprice, or idle curiosity." *In re Welfare of M.D.R.*, 693 N.W.2d 444, 448 (Minn. App. 2005) (quotation omitted), *review denied* (Minn. June 28, 2005).

Appellant argues that there are "no facts" in the record demonstrating that the stop and seizure by Officer Madson was supported by reasonable articulable suspicion. We disagree. The reasonable-suspicion standard is not high; it demands less than the standard for probable cause or a preponderance of the evidence, but requires more than a hunch. *State v. Diede*, 795 N.W.2d 836, 843 (Minn. 2011). The factual basis necessary to support an investigatory stop "need not arise from the personal observations of the police officer but may be derived from information acquired from another person." *Magnuson v. Comm'r of Pub. Safety*, 703 N.W.2d 557, 560 (Minn. App. 2005). An informant's tip may be adequate to support an investigative stop if the tip has sufficient indicia of reliability. *In re Welfare of G.M.*, 560 N.W.2d 687, 691 (Minn. 1997). When examining the sufficiency of an informant's tip to provide reasonable, articulable suspicion for a stop, the reviewing court examines two factors: (1) identification of the informant and (2) facts supporting the informant's basis of knowledge. *State v. Cook*, 610 N.W.2d 664, 667 (Minn. App. 2000), *review denied* (Minn. July 25, 2000). Neither factor is dispositive, and the overall determination of reasonable suspicion is based on the totality of the circumstances. *Id.*

Appellant argues that the information received from the limousine driver is insufficient to establish the requisite reasonable suspicion because Officer Madson "never obtained identifying information of the limo driver." To support his claim, appellant

cites *Olson v. Comm'r of Pub. Safety*, 371 N.W.2d 552, 556 (Minn. 1985), in which the supreme court held that when a stop is based on a tip alone, an "*anonymous* caller must provide at least some specific and articulable facts to support the bare allegation of criminal activity." (Emphasis added.) But Minnesota courts distinguish between anonymous and identifiable informants. *Rose v. Comm'r of Pub. Safety*, 637 N.W.2d 326, 328 (Minn. App. 2001), *review denied* (Minn. Mar. 19, 2002). When an informant provides sufficient information to locate him and hold him accountable for giving false information, an officer is justified in presuming that the informant is truthful in identifying himself. *Id.* "An informant who provides sufficient identifying information is not anonymous, even if the informant does not provide a name." *Id.* Anonymous tips that are "provided to police face to face are sufficiently reliable to justify an investigative stop, because the tipster puts himself in a position where his identity might be traced, and he might be held accountable for providing any false information." *State v. Balenger*, 667 N.W.2d 133, 138 (Minn. App. 2003), *review denied* (Minn. Oct. 21, 2003).

Here, there is nothing in the record indicating that Officer Madson obtained the name of the limousine driver. But Officer Madson spoke with the driver face-to-face, and identified the vehicle he was driving as a Hummer limousine. By speaking with the limousine driver in person, and recognizing his occupation, Officer Madson identified sufficient information so that the informant's "identity might be traced, and he might be held accountable for providing false information." *Id.*

Where the informant is identifiable, and the record supports an inference that the informant's tip was based on personal observation, courts have upheld investigatory stops

6

based on general tips of drunk driving. *See, e.g., City of Minnetonka v. Shepherd*, 420 N.W.2d 887, 891 (Minn. 1988) (stating that a gas station attendant's tip that a driver was intoxicated was sufficient to justify investigatory stop); *Magnuson*, 703 N.W.2d at 560-61 (stating that identified citizen's tip that a driver was drunk was sufficient to establish reasonable suspicion because it was based on the informant's personal observation); *State v. Pealer*, 488 N.W.2d 3, 5 (Minn. App. 1992) (concluding that police had reasonable suspicion for investigatory stop based on known, confidential informant's tip that a driver was intoxicated).

The record here reflects that the limousine driver stated that appellant smelled of alcohol and slurred his speech. The driver's statements were based on his personal interaction with appellant, and Officer Madson witnessed the driver conversing with appellant. Thus, Officer Madson had reason to believe the limousine driver's statements. *See Playle v. Comm'r of Pub. Safety*, 439 N.W.2d 747, 749 (Minn. App. 1989) (stating the police had reason to believe the informant based on his personal observations). Moreover, in addition to the driver's statements, Officer Madson witnessed appellant driving around in a grassy field on private property near some old abandoned buildings. Appellant's driving conduct was suspicious and was sufficient to justify the stop. Therefore, based on the totality of the circumstances presented here, which include appellant's suspicious driving conduct and the limousine driver's statements, Officer Madson's seizure of appellant was justified by the requisite reasonable articulable suspicion.

**Affirmed.**

7