STATE of Minnesota, Appellant,

v.

Dennis Michael RITCHIE, Jr., Respondent.

No. C0-85-1605.

Court of Appeals of Minnesota.

Dec. 24, 1985.

Review Denied Feb. 14, 1986.

Hubert H. Humphrey, III, Atty. Gen., Tom Foley, Ramsey Co. Atty., Steven C. DeCoster, Asst. Co. Atty., St. Paul, for appellant.

Deborah Ellis, Charles L. Hawkins, Thomson & Hawkins, St. Paul, for respondent.

Considered and decided by POPOVICH, C.J., and RANDALL and CRIPPEN, JJ., with oral argument waived.

## OPINION

POPOVICH, Chief Judge.

This is an appeal pursuant to Minn.R. Crim.P. 28.04, subd. 1, from an order suppressing evidence derived from the stop of the suspects' van and subsequent search of respondent. Appellant claims (1) respondent lacked standing to contest the stop of the vehicle in which he was a passenger, (2) the investigatory stop was lawful, and (3) evidence found in plain sight in van and in search of respondent's person should not have been suppressed. We reverse and remand.

## FACTS

On May 20, 1985 at 9:47 p.m., a radio dispatch was sent to officers Gerald Greenlee and John Wess reporting someone was pointing a gun at an apartment building occupant at 1035 Arkwright Street in St. Paul. The officers were patrolling near Arkwright and drove directly to the scene, arriving in three to four minutes. A second radio report indicated the suspects were still at the scene.

Wess and Greenlee testified (a) they observed a van about a block away, either stopped or pulling out at slow speed from in front of the apartment building, (b) the van proceeded south in front of them, (c) the officers sped to get within 150 feet behind the van and observed it accelerate unusually rapidly, (d) the van's headlights were not on, at least part of the block it travelled on Arkwright, (e) a description of the suspects was radio broadcast, (f) a description of the suspect vehicle also came from the dispatcher, and (g) the van turned right off Arkwright, west on Case Street where they stopped it. Sergeant Charles Anderson arrived from the west.

The van driver, Mark Friese, testified the van was not on Arkwright at the time the police claimed to have observed it, but was parked at the end of an alley behind the apartment building. Friese stated he never drove in front of the apartment building after dropping off respondent Dennis Ritchie and his accomplice David Stelling.

Following the stop and subsequent arrest of the three occupants, Anderson and Greenlee observed a .357 Magnum revolver with a shoulder holster on the van's floor in plain view. The robbery victim came to the arrest scene and identified the suspects. A $10 bill, four $1 bills, and a small metal case containing marijuana were seized from respondent's person.

Following the omnibus hearing and viewing the scene, the trial court found the stop

improper and suppressed all evidence obtained as a result of the stop. Concerned about conflicting testimony regarding the van's location when first sighted and its line of travel, the trial court credited Friese's testimony over the officers and stated:

> Now we come to the testimony of Mr. Friese. Now Friese was not charged, appears from all available evidence to be unaware that Stelling and Ritchie were going to pull a robbery, was totally unfamiliar with the neighborhood and couldn't tell the court what streets he was on if his life depended on it. All he could do is to show the court where he went.

> The strength of Friese's testimony is that his knowledge of the neighborhood is so nonexistent that it would be in my judgment almost impossible for him to make up a story.

> \*    \*    \*    \*    \*    \*

> [W]e went out and looked at the place and the court is convinced that whatever may be the truth of the matter that at all times relevant here that van was parked on Westminster Street headed south, that Friese or, Ritchie and Stelling came running down the alley, got into it and pulled ahead onto Westminster where the police stopped it on a hunch or whatever the basis might be, and that the van was not in fact going north or going south on Arkwright at the time the police claimed to have observed it.

> \* \* \* I am simply not persuaded that the state has proved by a preponderance of the evidence that the police had sufficient reason to stop the van and search the occupants \* \* \*.

The State's motion to reconsider based on the lack of standing of a passenger to contest the stop was denied.

## ISSUES

1. Does a passenger have standing to object to stop of vehicle?

2. Did the trial court properly find the investigatory stop unlawful?

## ANALYSIS

1. Appellant claims respondent did not have standing to contest the stop of the vehicle in which he was a passenger. We disagree.

The United States Supreme Court, in setting the standard for an investigatory stop at less than probable cause, said even a stop constituted a "serious intrusion upon the sanctity of the person, which may inflict great indignity and arouse strong resentment." *Terry v. Ohio*, 392 U.S. 1, 17, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889 (1968). It therefore "must be tested by the Fourth Amendment's general proscription against unreasonable searches and seizures." *Id.* at 20, 88 S.Ct. at 1879.

In *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), the United States Supreme Court held that passengers in a vehicle who had neither a possessory interest in the automobile searched nor an interest in the property seized, and who failed to show legitimate expectation of privacy in the areas searched, were not entitled to challenge the search. The petitioners in *Rakas* did not challenge the constitutionality of the stop but the dissent noted "petitioners of course have standing to challenge the legality of the stop, and the evidence found may be a fruit of that stop." *Id.* at 160 n. 5, 99 S.Ct. at 439, n. 5 (White, Brennan, Marshall and Stevens, JJ., dissenting).

In *United States v. Payner*, 447 U.S. 727, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980), the Supreme Court held a defendant's Fourth Amendment rights are violated only when the challenged conduct invades his legitimate expectation of privacy. A court may not exclude evidence under the Fourth Amendment unless it finds an unlawful search or seizure violates defendant's own constitutional rights. *Id.* at 731, 100 S.Ct. at 2443.

Here, respondent had a protectible Fourth Amendment interest in not being stopped unless the police officers were able to justify the stop based on the standards

set forth in *Terry* and in *United States v. Cortez*, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). A brief stop is considered a seizure and an individual who is stopped is entitled to Fourth Amendment protection, even though the standards justifying a stop are lower than for arrest. *Terry*, 392 U.S. at 20, 88 S.Ct. at 1879. We conclude respondent had standing to contest the constitutionality of the stop.

2. Appellant claims officers responding to a report of an armed assault in progress were justified in stopping the van they believed was carrying the suspects away from the scene and seizing evidence found in plain sight and in search of respondent's person.

■ In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, the United States Supreme Court said:

> [I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.

*Id.* at 21, 88 S.Ct. at 1880 (footnote omitted). The reasonableness of a particular stop must be evaluated "in light of the particular circumstances." *Id.*

In *United States v. Cortez*, 449 U.S. 411, 101 S.Ct. 690, the Court set forth the analytical framework for determining whether an investigative stop is constitutional:

> [T]he totality of the circumstances—*the whole picture—must be taken into account.* Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.

*Id.* at 417–18, 101 S.Ct. at 695 (emphasis added).

Here, the trial court made its ruling on the record and concluded the police had not demonstrated sufficient reason to stop the van and search its occupants. Express findings were not made. It is clear, however, the trial court found the van was not sighted on Arkwright in front of the apartment building as the police testified, but instead pulled away from behind the building where it was intercepted and stopped. The trial court did not expressly reject the remainder of the officers' testimony.

■ Where only part of the officers' testimony is rejected, the remainder of the testimony must be examined to determine whether sufficient reason existed to make the stop. *See State v. Kvam*, 336 N.W.2d 525, 528 (Minn.1983). Here, the officers stated they were called to the crime scene and arrived within three to four minutes. A radio broadcast supplied the officers with a description of the van and the suspects. Regardless of where the officers first sighted the van, it was intercepted and stopped within the close vicinity of the apartment building.

■ The totality of the testimony and the circumstances demonstrates the officers did articulate a particularized and objective basis for making the stop. Where the officers sighted the van, by itself, is not a dispositive element. The trial court erred in not concluding the stop was valid based on the remainder of the officer's testimony.

The Minnesota Supreme Court has held in a pretrial appeal from an order suppressing evidence in a criminal case, the trial court's ruling will be reversed only

> if the state demonstrates clearly and unequivocally that the trial court has erred in its judgment and that, unless reversed, the error will have a critical impact on the outcome of the trial.

*State v. Webber*, 262 N.W.2d 157, 159 (Minn.1977).

Here, the trial court error will have a critical impact on the trial outcome. Because the trial court found the stop invalid, all the evidence derived from the stop of the suspects' van and the search of respondent was suppressed. We conclude the stop was justified and therefore the evidence was improperly excluded.

### DECISION

The trial court properly denied the State's motion to reconsider because a pas-

senger has standing to contest a vehicle's stop. The trial court erred in finding the investigatory stop unlawful and in suppressing evidence obtained as a result of the stop.

Reversed and remanded.