STATE of Minnesota, Respondent,

v.

Tavon Tarrel TIMBERLAKE,
Appellant.

No. A06–72.

Court of Appeals of Minnesota.

Jan. 16, 2007.

510

Lori Swanson, Attorney General, St. Paul, MN and Susan Gaertner, Ramsey County Attorney, Mark Nathan Lystig, Assistant County Attorney, St. Paul, MN, for respondent.

John M. Stuart, State Public Defender, Susan Andrews, Assistant State Public Defender, Minneapolis, MN, for appellant.

Considered and decided by MINGE, Presiding Judge; HUDSON, Judge; and HUSPENI, Judge.*

## OPINION

HUDSON, Judge.

Appellant Tavon Timberlake challenges the district court's order denying his motion to suppress evidence of a gun found during an investigative *Terry* stop of the car in which he was the passenger. Appellant argues that the district court erred in concluding that the officers who initiated the stop articulated a particularized and objective basis for suspecting appellant of criminal activity. Because we conclude that the facts available to the police officers at the inception of the stop were insufficient to form a reasonable suspicion that appellant was engaged in criminal activity, we reverse.

## FACTS

On May 30, 2004, at approximately midnight, two St. Paul police officers answered a call from dispatch informing them that an identifiable private citizen had wit-

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

nessed a black male at a convenience store on the corner of Maryland and Arkwright drop or set down what appeared to be a handgun as he got out of the passenger side of a white Pontiac Grand Prix. The informant stated that the black male quickly picked up the gun and got back into the car, which was being driven by a black female. The informant did not provide a license plate number; nor did the informant indicate that the black male had committed a crime or that the black female appeared to be in danger.

The officers testified that they were seven blocks from the convenience store when the call came in and were able to arrive at the scene in about fifteen to twenty seconds. As the officers approached the scene, dispatch informed them that the private citizen witnessed the car leave the convenience store heading east on Maryland. Traveling north on Arkwright, the officers noticed a white Pontiac Grand Prix heading east on Maryland approaching Arkwright. The officers testified that from their position they could see that a black female was driving the car and that a black male was the passenger.

The officers followed the car until backup arrived, and then they initiated a traffic stop of the car. Before initiating the stop the officers did not run the license plate, testifying that "[a]t that point, that was not a priority." Nor did the officers testify that they observed anything unusual or suspicious about the car, the manner in which it was driven, or the actions of the occupants that would independently warrant initiating a *Terry* stop.

After pulling the car over and ordering both occupants to exit the car, the officers discovered a handgun lying in plain view on the passenger-side floor. Appellant was arrested and charged with being a felon in possession of a firearm in violation of Minn.Stat. § 624.713, subd. 1(b) (Supp.

2003). At the *Rasmussen* hearing, appellant moved to suppress the gun, arguing that the gun was the product of an unreasonable search and seizure. The district court denied the motion. In its findings of fact and order, the district court relied on the officers' testimony that after they initiated the stop they witnessed appellant making furtive movements, which heightened their suspicions that appellant had a gun. After a jury trial, appellant was found guilty as charged. The district court sentenced appellant to sixty months in prison. This appeal follows.

## ISSUE

Did the district court err by concluding that at the inception of the stop the police officers had a particularized and objective basis for suspecting appellant of criminal activity?

## ANALYSIS

Appellant challenges the district court's order denying his motion to suppress evidence that he possessed a gun, arguing that the traffic stop was an unlawful seizure. We review the legality of an investigatory *Terry* stop de novo. *State v. Schrupp*, 625 N.W.2d 844, 846 (Minn.App. 2001), *review denied* (Minn. July 24, 2001).

A person has a constitutional right to not be subjected to an unreasonable search and seizure. U.S. Const. amend. IV; Minn. Const. art. I, § 10. Any evidence gathered pursuant to an unreasonable seizure must be suppressed. *State v. Harris*, 590 N.W.2d 90, 99 (Minn. 1999). A seizure occurs when an officer, by means of physical force or show of authority, has in some way restrained the liberty of a person. *Id.* at 98. The relevant inquiry is whether based on the totality of the circumstances a reasonable person would believe that he or she is neither free to disregard the police nor free to

terminate the encounter. *Id.; In re Welfare of E.D.J.*, 502 N.W.2d 779, 783 (Minn. 1993).

■ In determining if a stop is an unreasonable seizure, courts examine "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances." *Terry v. Ohio*, 392 U.S. 1, 19–20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968). The stop cannot be the product of mere whim, caprice, or idle curiosity. *State v. Munson*, 594 N.W.2d 128, 136 (Minn.1999); *see also Terry*, 392 U.S. at 22, 88 S.Ct. at 1880 ("[I]ntrusion[ ] upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches, [is] a result this Court has consistently refused to sanction."). In justifying the intrusion upon a person's privacy, the police must be able to "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21, 88 S.Ct. at 1880. The Supreme Court has stated that this standard is satisfied if based upon the "totality of the circumstances" the officers initiating the stop have a "particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417–18, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981). This test has two elements that must be present before the stop is permissible. *Id.* at 418, 101 S.Ct. at 695. First, the officer's suspicion must be based on an assessment of all of the circumstances. *Id.* This permits the officer to draw inferences and deductions that might elude an untrained individual. *Id.; Harris*, 590 N.W.2d at 99. Second, the officer's assessment of all of the circumstances must lead the officer to suspect "that the particular individual being stopped is engaged in wrongdoing." *Id.*

■ Activity consistent with innocent behavior may justify a suspicion of criminal activity. *State v. Johnson*, 444 N.W.2d 824, 826 (Minn.1989). But the officer must be able to articulate "objective facts that, by their nature, quality, repetition, or pattern become so unusual and suspicious that they support at least one inference of the possibility of criminal activity." *Schrupp*, 625 N.W.2d at 847–48.

■ The officer's reasonable suspicion does not have to be based upon the officer's personal observations. *In re Welfare of G.M.*, 560 N.W.2d 687, 691 (Minn. 1997). An officer may rely on an informant's tip if the tip has sufficient indicia of reliability. *Id.* In assessing the reliability of a tip, courts examine the informant and the basis of the informant's knowledge. *Id.* A private citizen who is identifiable or identified is presumed to be reliable. *Rose v. Comm'r of Pub. Safety*, 637 N.W.2d 326, 328 (Minn.App.2001), *review denied* (Minn. Mar. 19, 2002). In judging the basis of the informant's knowledge, courts examine (1) the quantity and quality of detail in the informant's report, and (2) the officer's independent verification of the details in the informant's report. *Alabama v. White*, 496 U.S. 325, 330–32, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301 (1990).

■ It is "without question [that] the stopping of a vehicle and the detention of its occupants constitutes a seizure." *E.D.J.*, 502 N.W.2d at 782 (quotation omitted). A passenger in a vehicle stopped by the police has standing to contest the legality of the stop. *State v. Ritchie*, 379 N.W.2d 550, 552–53 (Minn.App.1985), *review denied* (Minn. Feb. 14, 1986). Thus, appellant has a "protectible Fourth Amendment interest in not being stopped unless the police officers were able to justify the stop based on the standards set forth in *Terry* and . . . *Cortez*." *Id.*

Appellant contends that the district court erred by concluding that the officers articulated a particularized and objective basis for suspecting appellant of criminal activity. The district court's decision was based primarily on the fact that appellant was in possession of a gun while riding in a car late at night. We are thus called upon again to balance the state's interest in public safety against an individual's Fourth Amendment guarantee. That always delicate task is especially difficult here, as no Minnesota case has decided the precise issue of whether mere possession of a gun amounts to reasonable suspicion that criminal activity is afoot. Further, both parties presented compelling arguments in support of their respective positions. That said, we conclude that the *Terry* stop violated appellant's constitutional rights.

At the inception of the stop, all that the officers knew was that an informant had witnessed a black male in possible possession of a handgun near a convenience store, and that the black male had left the convenience store heading east on Maryland in a white Pontiac Grand Prix driven by a black female. The officers were able to verify that a white Pontiac Grand Prix, being driven by a black female with a black male passenger, was heading east on Maryland approaching Arkwright.

██ Because the informant was an identifiable private citizen, and the officers were able to verify details of the informant's report before initiating the stop, it was reasonable for the officers to suspect that someone in the white Pontiac Grand Prix was in possession of a gun. But in Minnesota, possession of a firearm in a motor vehicle is lawful if the possessor has a permit. Minn.Stat. § 624.714, subd. 1a (Supp.2003). Nevertheless, respondent contends that because possession of a gun in a public place is unlawful without a permit, the officers had reasonable suspi-

cion to believe that appellant was committing a crime—i.e., that he did not have a permit. But it is equally plausible that appellant *did* have a permit. Accordingly, we conclude that mere suspicion that a person possesses a gun is insufficient to warrant a *Terry* stop, absent additional particular and objective facts which create a reasonable suspicion that the possessor does not have a permit or is otherwise about to commit a crime.

Our holding is supported by our decisions in *State v. Balenger*, 667 N.W.2d 133 (Minn.App.2003), *review denied* (Minn. Oct. 21, 2003), and *State v. Ritchie*. In *Balenger*, an identifiable informant walked up to a police officer and told them that a woman wearing a hat and an L.A. Lakers jersey had just pointed a gun at the informant's friend. 667 N.W.2d at 136. The informant identified Balenger as the perpetrator. *Id.* The police stopped her and discovered a gun. *Id.* The district court granted Balenger's motion to suppress the gun and dismissed the case. *Id.* This court reversed the district court holding that the detaining officers performed a lawful *Terry* stop because "the circumstances warranted [the officer's] belief that his safety and the safety of others was threatened." *Id.* at 138.

In *Ritchie*, police responded to a call that an individual was pointing a gun at somebody. 379 N.W.2d at 551. The district court determined that the stop was unlawful and suppressed all evidence seized because the vehicle that the officers stopped was initially sighted in an area inconsistent with the informant's information. *Id.* at 551–52. This court reversed the district court, holding that the stop was reasonable because the officers (1) arrived in three or four minutes at the scene where a reported crime was in progress; (2) dispatch supplied the officers with a description of the suspects and the

vehicle they were traveling in; and (3) a vehicle matching the description was "intercepted and stopped within the close vicinity" of the scene of the crime. *Id.* at 553.

*Balenger* and *Ritchie* are significant because in both cases the officers were able to point to particular and objective facts that, together with reasonable inferences from those facts, created a reasonable suspicion that a particular individual suspected of possessing a gun was also engaged in some type of criminal activity, namely pointing a gun at the respective victims. Furthermore, our decisions in *Balenger* and *Ritchie* are consistent with the Supreme Court's decisions in *Terry* and *Cortez*. In *Terry* the Supreme Court stated the detaining officer was justified in conducting an investigative stop because the officer was able to point to conduct that was arguably innocent on its face, but which in the aggregate led the officer to reasonably suspect that the plaintiff was about to commit a daytime robbery. 392 U.S. at 22–23, 88 S.Ct. at 1880–81. Likewise in *Cortez* the Supreme Court sustained the reasonableness of a traffic stop because the officers were able to point to a compilation of facts that may have eluded an untrained person which warranted a reasonable suspicion that the car they stopped was transporting illegal immigrants. 449 U.S. at 419–22, 101 S.Ct. at 695–97.

 In contrast, here, the informant did not accuse appellant of pointing the gun at anyone or indicate that appellant was engaged in any other criminal activity. Nor did the informant provide any facts that would reasonably support a belief that the driver was in danger. Based on the information available at the inception of the stop, the officers were not warranted in believing that their safety or the safety of anyone else was in danger, or that appellant had or was planning to commit a crime.

 In addition, there is nothing in the record that would independently support a reasonable suspicion that appellant did not have a permit to carry the gun. We note first that the informant did not know whether appellant had a permit for the gun, and neither party claims otherwise. Second, the officers did not have any knowledge as to the identities of the driver or the passenger or their status with regard to possession of a firearm.[1] Third, the officers did not "run" the license plate of the vehicle before initiating the stop in order to ascertain who the registered owner of the car was and whether that person was licensed to carry a firearm. Fourth, the officers articulated nothing about the manner in which appellant was handling the gun or the surrounding circumstances which in their experience led them to believe that appellant might not have a permit. In sum, the officers did not articulate any facts which would permit a conclusion that their suspicion that appellant was unlawfully possessing a firearm was based on anything other than an "inchoate and unparticularized suspicion or hunch." *Terry*, 392 U.S. at 27, 88 S.Ct. at 1883.

1. Unpublished opinions of this court are not precedential. *Dynamic Air, Inc. v. Bloch*, 502 N.W.2d 796, 800 (Minn.App.1993); Minn. Stat. § 480A.08, subd. 3(c) (2004). They can, however, be of persuasive value. *Dynamic Air*, 502 N.W.2d at 800. Accordingly, we note that in *State v. McCurtis*, this court held that the detaining officers were justified in performing a *Terry* stop of appellant based on an informant's tip that appellant possessed a gun because the officers knew who appellant was and that he had been arrested for gun-related charges in the past. 2005 WL 1804303 (Minn.App. Aug.2, 2005). The officers here possessed no such independent information about appellant.

Finally, we note that it appears the district court based its decision, in part, on the officers' testimony that after pulling the car over they witnessed appellant making furtive movements. But it is well established that the officers' reasonable suspicion must be based on facts that existed at the inception of the stop. *Id.* at 19–20, 88 S.Ct. at 1879. Thus the district court's reliance on this testimony is misplaced.

Although the standard for an investigative stop is less than what is needed for an arrest, "[a] brief stop is considered a seizure and an individual who is stopped is entitled to Fourth Amendment protection." *Ritchie,* 379 N.W.2d at 553. On this record, the officers did not articulate a particularized and objective basis for suspecting appellant of criminal activity, and thus the *Terry* stop of the car subjected appellant to an unreasonable search and seizure in violation of both the United States and Minnesota Constitutions.

The dangers and challenges facing law enforcement officers are well-known and need not be detailed here. And, for that reason, our opinion should not be read to suggest that the officers were not acting in good faith while carrying out their duty of protecting the public's safety, health and welfare. But "good faith on the part of the arresting officer is not enough." *Terry,* 392 U.S. at 22, 88 S.Ct. at 1880 (quotation omitted). *Terry* requires a particularized and objective basis for suspecting appellant of criminal activity, and that simply was not present here.

## DECISION

Because the officers lacked a particularized and objective basis for suspecting that appellant did not have a permit to carry a gun or that appellant was engaged in some other type of criminal activity, the district court erred by denying appellant's motion to suppress evidence obtained during the *Terry* stop of the car appellant was riding in.

**Reversed.**