# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2634

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| Ali Ahmed Sheikh, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: February 10, 2004
Filed: May 7, 2004

_____

Before RILEY and RICHARD S. ARNOLD, Circuit Judges, and HOVLAND,[1] District Judge.

_____

RILEY, Circuit Judge.

A jury convicted Ali Ahmed Sheikh (Sheikh) of (1) conspiracy to possess with intent to distribute a substance containing cathinone, a Schedule I controlled substance, and cathine, a Schedule IV controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) & 846 (2000); (2) possession with intent to distribute the same controlled substances, in violation of 21 U.S.C. § 841(a)(1); and (3) using a communication facility in causing and facilitating the commission of a felony under

_____

[1]The Honorable Daniel L. Hovland, Chief Judge, United States District Court for the District of North Dakota, sitting by designation.

the Controlled Substances Act (CSA), in violation of 21 U.S.C. § 843(b) and 18 U.S.C. § 2. The district court[2] sentenced Sheikh to seventy-four days imprisonment and a three-year term of supervised release. Sheikh appeals his convictions. We affirm.

## I. BACKGROUND

In August 2002, Sheikh, a Somalian male immigrant, lived with Somalian relatives in an apartment complex in Sioux Falls, South Dakota, and attended a local high school. On August 2, Sioux Falls police detective Pat Kneip (Detective Kneip) received a tip from a Federal Express (FedEx) manager that a package mailed from London, England, was suspected of containing khat.[3] Working on the tip, Detective Kneip disguised himself as a FedEx deliveryman and attempted to deliver the package to the apartment where Sheikh lived. When Detective Kneip arrived at the apartment complex, Sheikh and several other Somalian males were sitting at a picnic table. Sheikh approached Detective Kneip and asked whether the package was for him. Detective Kneip, in turn, asked Sheikh if he was the addressee, "Mr. Bronson." Sheikh responded affirmatively and signed for the package, writing the name "Bronson" on the FedEx receipt.

After Sheikh signed for the package, Detective Kneip identified himself as a police officer. Sheikh immediately denied the package belonged to him, revealed his

---

[2]The Honorable Lawrence J. Piersol, Chief Judge, United States District Court for the District of South Dakota, adopting the Report and Recommendation of the Honorable Marshall P. Young, United States Magistrate Judge for the District of South Dakota.

[3]Catha edulis, commonly called "khat," is a bush plant with stimulating effects and is indigenous to countries in the Middle East and Africa, including Somalia and Kenya, where Sheikh formerly resided. Khat contains variable levels of cathinone and cathine, which are controlled substances in the United States. See 21 C.F.R. §§ 1308.11(f)(2) & 1308.14(e)(1) (2003).

true identity, and gave consent for Detective Kneip to open the package. Upon opening the package Detective Kneip observed what he believed to be khat.

Immediately thereafter, approximately eight additional law enforcement officers from the Sioux Falls Police Department, Federal Bureau of Investigation, and Immigration and Naturalization Service (INS) arrived at the apartment complex to participate in the criminal investigation. Thereafter, Sheikh's cousin, Saadia Hipsi (Hipsi), a female Somalian, arrived at the apartment. Hipsi allowed law enforcement officers to search the apartment. Detective Kneip interviewed Sheikh inside the apartment at the kitchen table for approximately thirty minutes. Based on Sheikh's interview statements and positive testing results on the package contents, Sheikh was later arrested and indicted.

Sheikh moved to suppress his statements to Detective Kneip. At the suppression hearing, Detective Kneip testified he told Sheikh he wanted to ask Sheikh some questions, but advised Sheikh (1) he was not under arrest; (2) he did not have to speak to law enforcement; and (3) he was free to leave. Detective Kneip testified he also explained to Sheikh that, because there was no field test for khat, the contents of the package would have to be sent to a laboratory for testing and a positive result for a controlled substance obtained before Sheikh could be arrested. Sheikh agreed to a police interview, which was conducted solely by Detective Kneip, although his supervisor, Lieutenant Doug Barthel (Lieutenant Barthel), observed the interview.

Detective Kneip testified Sheikh initially told him the package belonged to Mohammad Sahid Ali (Mohammad), a young Somalian man from Rochester, Minnesota, whom Sheikh had met a few months earlier. Detective Kneip recounted Sheikh explained how Mohammad asked Sheikh to accept possession of a few mailed packages and then to deliver the packages to Mohammed. According to Sheikh, Mohammad assured Sheikh he could not get in trouble for anything contained inside the packages. Sheikh told Detective Kneip that Mohammad called him the evening

before and told him a package containing clothing would be delivered to the apartment. Sheikh also told Detective Kneip he had received several packages belonging to Mohammad during the previous month and had delivered the packages to Mohammad. When Detective Kneip asked Sheikh if he had ever seen khat before, Sheikh told him he had seen khat in Kenya, where he had previously lived, but had not seen khat in the United States during his three-year residency.

After interviewing Sheikh for ten minutes, Detective Kneip left the apartment to speak to the other law enforcement officers, who had been interviewing the other Somalians at the apartment complex. Based on his discussions with the other officers, Detective Kneip suspected Sheikh was lying. Detective Kneip returned to the apartment and resumed the interview with Sheikh. Detective Kneip immediately confronted Sheikh, telling him he was lying and his statements were "bullshit." Detective Kneip also told Sheikh he was going to take the "hit" for the package, because he was not being truthful. Detective Kneip testified that during the interview he may have raised his voice, but he did not yell at or otherwise intimidate Sheikh.

Detective Kneip testified that, after he accused Sheikh of lying, Sheikh told him, "Throw away all those notes. They're all lies. I'm ready to tell you the truth." Sheikh then told Detective Kneip that a Somalian nicknamed "Duker,"[4] who was one of the Somalian males sitting outside the apartment complex, was responsible for the khat. Sheikh explained to Detective Kneip that, in exchange for Sheikh's willingness to accept packages and deliver them, Duker gave Sheikh seven of the seventy-five to eighty bundles of khat contained in each package. Sheikh told Detective Kneip he drove to Marshall, Minnesota, where he sold his seven bundles of khat for $45 apiece. Sheikh also told Detective Kneip that Duker had asked him for alternative delivery addresses, which Sheikh supplied. Sheikh told Detective Kneip several packages had

_____

[4]Law enforcement later identified "Duker" as Omar Hassan Jama (Jama). Jama was also included in the government's three-count indictment.

4

been delivered to his friend Tansy Callies's (Tansy) apartment in the same complex, and another package was due to arrive that same day at Tansy's parents' trailer located down the street from the apartment complex. Sheikh told Detective Kneip he never informed Hipsi or Tansy the packages contained khat.

Following the thirty-minute interview, Sheikh was not taken into custody. However, INS officials wanted to question Sheikh and the other Somalians at the INS office. Detective Kneip offered to drive Sheikh to the INS office in lieu of him being transported in an INS van. Sheikh accepted the offer, and he was later released after INS questioning.

Detective Kneip testified that, during the interview, he had encountered no problems understanding Sheikh, although he acknowledged Sheikh's spoken English was "a little broken." Detective Kneip also testified Sheikh never complained he was having difficulty either understanding or answering the questions posed to him. According to Detective Kneip, Sheikh "was able to answer all the questions that were presented to him, and his answers were easy to understand."

Sheikh presented two language proficiency witnesses–Dr. Robert Vicars (Dr. Vicars), an independent language education consultant, and Robert Steven Sivertson (Sivertson), an English teacher at the high school where Sheikh attended. Based on a "blind" review of an audiotape of Sheikh speaking English, Dr. Vicars rated Sheikh's English language proficiency at a "novice mid" level, which corresponds to the second lowest proficiency rating out of ten possible ratings, based on testing standards promulgated by the American Council on the Teaching of Foreign Languages (ACTFL). Dr. Vicars also testified he did not know whether the audiotape had been prepared after Sheikh's indictment, and Dr. Vicars stated he had not met Sheikh face-to-face or interviewed anyone who knew Sheikh in order to perform any reliability testing. Sivertson testified he taught Sheikh a basic English course in 2002 and a two-semester American studies course in 2003. Sivertson testified he would

5

rate Sheikh's ability to communicate in English as "adequate," and he did not remember any recent communication problems with Sheikh.

Hipsi also testified at the suppression hearing, stating she repeatedly asked permission to talk with Sheikh during the August 2, 2002 interrogation. Eventually, she was allowed to ask Sheikh one question, "Whose this khat?" When Hipsi asked Sheikh the question in Somali, she was told she must speak English, so the officers could understand the conversation. When Hipsi asked Sheikh the question in English, he responded the khat did not belong to him.

Following the suppression hearing, the magistrate judge determined Sheikh was not in custody when he was interviewed on August 2, 2002; therefore, Miranda warnings were not required. The magistrate judge recommended Sheikh's motion to suppress his statements be denied. The district court adopted the magistrate judge's recommendation and denied the motion to suppress.

At his jury trial, Sheikh waived his Fifth Amendment rights and testified using an interpreter. Sheikh told the jury a different version of events than Detective Kneip testified Sheikh told him on August 2, 2002. Sheikh told the jury he met Duker and Duker's younger brother several weeks before August 2, and Duker asked Sheikh to accept several packages for him, and to deliver the packages to Duker. Sheikh testified Duker called on the evening of August 1, and told Sheikh to expect the arrival of two FedEx packages, one addressed to Sheikh's apartment and a second package addressed to Tansy's apartment. Sheikh told the jury when Duker arrived at the apartment complex at 8:30 a.m. on August 2, Duker told Sheikh the packages scheduled for delivery contained khat. Duker also explained to Sheikh he paid taxes on the khat, khat was legal, and accepting the packages would not cause anyone trouble. Sheikh testified he understood Duker's brother-in-law in London was sending packages containing khat to cities located in South Dakota and Nebraska. Duker drove and retrieved the packages and then returned to Minnesota, where he

6

distributed khat at a profit in Rochester and Marshall. Sheikh denied any involvement in transporting or distributing khat.

Following a two-day trial, the jury returned guilty verdicts against Sheikh on all three counts. Sheikh then filed a motion for acquittal, which the district court denied. Sheikh appeals his convictions, claiming (1) the district court erred in denying his motion to suppress; (2) the convictions are based on insufficient evidence of criminal knowledge; and (3) the penal statutes under which he was convicted are void for vagueness, thereby depriving him of due process.

## II.   DISCUSSION

### A.   Motion to Suppress

We review suppression issues under a two-pronged standard of review: the district court's factual findings are reviewed for clear error; its legal conclusions are reviewed de novo. United States v. Kelly, 329 F.3d 624, 628 (8th Cir. 2003). We conduct an independent review of "in custody" determinations on direct appeal. United States v. Axsom, 289 F.3d 496, 499-500 (8th Cir. 2002). The district court determined Sheikh was not in custody on August 2, 2002, and Miranda warnings were not required. We have outlined general indicia of custody to assist fact finders in determining whether a suspect is in custody: (1) whether law enforcement informed the suspect the questioning was voluntary, and the suspect was free to leave and was not under arrest; (2) whether the suspect had unrestrained freedom of movement during the questioning; (3) whether the suspect contacted the authorities or voluntarily agreed to official requests to answer questions; (4) whether law enforcement employed strong arm tactics or deceptive stratagems during questioning; (5) whether the atmosphere of the interrogation was police dominated; or (6) whether law enforcement placed the suspect under arrest at the end of questioning. United States v. Griffin, 922 F.2d 1343, 1349 (8th Cir. 1990); see Axsom, 289 F.3d at 500-01.

7

In applying these indicia to Sheikh's interrogation on August 2, 2002, it is important to recognize the magistrate judge did not have the benefit of Sheikh's trial testimony, because Sheikh elected not to testify at the suppression hearing. Hipsi did testify. On August 2, 2002, Hipsi was behind closed doors and did not overhear Detective Kneip's interrogation of Sheikh. Therefore, in making a custody determination, the magistrate and district judges relied largely on Detective Kneip's undisputed testimony.

After reviewing the suppression transcript, we conclude the magistrate judge correctly applied the Griffin indicia. Detective Kneip told Sheikh he was not under arrest, was free to leave, and did not have to speak to law enforcement officers. Detective Kneip also testified he did not restrain Sheikh's movement, and Lieutenant Barthel testified Sheikh would have been free to leave the apartment and the apartment complex had he wished to do so. Furthermore, Detective Kneip testified Sheikh voluntarily agreed to answer questions. No evidence was presented that law enforcement officials used either strong-arm or deceptive tactics, and Sheikh was not arrested after questioning on August 2, 2002. Although the magistrate judge found the atmosphere was police dominated, he correctly concluded the Griffin factors weighed against a custody finding.

In arguing his statements must be suppressed, Sheikh emphasizes his deficiency in speaking and comprehending English. At trial, Sheikh gave considerable testimony on the matter. However, the magistrate judge did not have the benefit of Sheikh's testimony at the suppression hearing. Detective Kneip testified that, although Sheikh's spoken English was broken, Detective Kneip had no difficulty understanding Sheikh, and Sheikh appeared to have no difficulty understanding the questions or answering them. Furthermore, Sheikh's high school English teacher testified at the suppression hearing that Sheikh's English language skills were adequate, and Sheikh's teacher was not aware of any recent communication problems with Sheikh. Based on the evidence presented at the hearing, the magistrate judge

correctly determined Sheikh's alleged linguistic deficiencies did not outweigh the five Griffin indicia, which strongly indicated a non-custodial interrogation. Accordingly, the district court, adopting the magistrate judge's Report and Recommendation, properly denied the motion to suppress.

### B. Sufficiency of the Evidence

Next, Sheikh contends the evidence adduced at trial was legally insufficient for a jury to find beyond a reasonable doubt Sheikh had the requisite criminal knowledge or *mens rea*. "We review the sufficiency of the evidence de novo, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." United States v. Hamilton, 332 F.3d 1144, 1148 (8th Cir. 2003). We recognize this standard of review is strict and permits us to reverse a verdict only if no reasonable jury interpreting the evidence could find the defendant guilty beyond a reasonable doubt. Id. at 1149.

After reviewing the trial transcript and the motion for acquittal, we are persuaded the government adduced sufficient evidence by which a reasonable jury could find Sheikh guilty beyond a reasonable doubt. Sheikh testified he spoke to Duker on the telephone the night before the package arrived. Duker advised Sheikh two packages would be delivered to Sheikh's and Tansy's apartments the following morning, and Duker asked Sheikh to accept the packages. Before the packages were delivered, Duker arrived at the apartment complex and told Sheikh the packages contained khat. When Detective Kneip appeared with the package at the apartment complex, Sheikh was present and awaiting the delivery. He initially claimed ownership of the package and signed a false name for it, but minutes later denied ownership when Detective Kneip revealed he was a police officer. Deception and contradictory statements are convincing evidence of guilt.

Following the controlled delivery, Detective Kneip opened the package and seized its contents. After the crime laboratory confirmed the contents were khat, containing the controlled substances cathinone and cathine, the government offered the contents into evidence. Detective Kneip testified Sheikh told him Sheikh had received seven packages, not including those delivered on August 2, and had delivered the packages to Duker. Detective Kneip also told the jury that, during his interview, Sheikh admitted Duker gave Sheikh just under ten percent of each khat shipment Sheikh received, and Sheikh sold his cut in Marshall for $45 per bundle. Detective Kneip further related Sheikh told him Sheikh supplied Duker with additional names and addresses where khat packages could be mailed. This evidence directly implicates Sheikh in the indicted offenses.

We agree with the government that, given Sheikh's knowledge of khat from his previous residences in Somalia and Kenya, a jury could reasonably conclude Sheikh knew khat contained stimulant substances, even if Sheikh did not expressly know the names of the substances, cathinone and cathine. Sufficient evidence supports the convictions, and the district court properly denied Sheikh's motion for acquittal.

### C. Void for Vagueness

Lastly, Sheikh claims he was denied due process notice because neither Title 21 of the United States Code nor the Code of Federal Regulations expressly list khat as a controlled substance. Sheikh argues the CSA fails to provide fair notice that possession of khat with intent to distribute constitutes a federal offense. As such, Sheikh alleges the federal statutes are void for vagueness in violation of the Fifth Amendment's Due Process Clause.

We review de novo constitutional challenges to federal statutes. United States v. Orchard, 332 F.3d 1133, 1137 (8th Cir. 2003). "A penal statute is unconstitutionally vague if it fails to 'define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in

a manner that does not encourage arbitrary and discriminatory enforcement.'" Id. at 1137-38 (quoting Kolender v. Lawson, 461 U.S. 352, 357 (1983)). "A vagueness challenge to a statute which does 'not involve First Amendment freedoms must be examined in the light of the facts of the case at hand.'" Id. at 1138 (quoting United States v. Mazurie, 419 U.S. 544, 550 (1975)).

This circuit has not previously addressed a Fifth Amendment challenge to the CSA in the context of khat. However, the First Circuit recently addressed the identical due process issue in United States v. Hussein, 351 F.3d 9 (1st Cir. 2003). The First Circuit held the failure of the CSA to list khat as a controlled substance did not deny Hussein fair warning and violate his right to due process. The First Circuit explained:

> Due process does not require the statute specifically to prohibit either "khat" or "khat containing cathinone" as a precondition to conviction. And the fact that the architects of the law "might, without difficulty, have chosen 'clearer and more precise language' equally capable of achieving the end which [they] sought does not mean that the statute which [they] in fact drafted is unconstitutionally vague."

Id. at 15 (internal citations omitted) (alternations in original). We agree with the First Circuit that "due process simply does not require so high a degree of specification[,]" as Sheikh would impose. Id. at 16 (quoting United States v. Arcadipane, 41 F.3d 1, 5 (1st Cir. 1994)). The permanent guardians of due process–clarity, fairness, and reasonableness–are not offended. The district court properly rejected Sheikh's due process claim.

## III.    CONCLUSION

For the foregoing reasons, we affirm Sheikh's convictions.

_____