# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3023

_____

|  |  |  |
|---|---|---|
| United States of America | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the Western |
| Thomas R. Fuller, | * | District of Missouri. |
| | * | |
| Appellant. | * | |

_____

Submitted: April 13, 2004
Filed: July 7, 2004 (Corrected: July 30, 2004)

_____

Before MORRIS SHEPPARD ARNOLD, RILEY, and COLLOTON, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Thomas Fuller was convicted in federal district court[1] of possessing cocaine base (crack) with the intent to distribute it, conspiring to distribute it, aiding and abetting its distribution, carrying a weapon during a drug transaction, and being a felon in possession of a firearm. His appeal raises objections to the denial of his motion to suppress, the sufficiency of the evidence to convict him, and matters relating to his sentencing. For the reasons stated below, we affirm the district court in all respects.

_____

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

The following facts are undisputed. A police officer stationed on the rooftop of a parking garage observed two cars (a GMC van and a Buick sedan) in the parking lot below. The drivers of the two vehicles were talking. The driver of the sedan, Mr. Fuller, then opened the trunk of the sedan and handed the driver of the van, who turned out to be Mr. Fuller's stepson, a large plastic sack. After receiving the sack, the stepson drove off in the van, which was immediately stopped by a police cruiser that the officer atop the parking garage had alerted by radio. The officers in the cruiser noticed a smell of marijuana coming from the van and asked for permission to search it. The stepson gave them permission, and the search uncovered a large plastic bag containing marijuana, 119 grams of crack cocaine, $2,218 in cash, some live rounds of .38 caliber ammunition, and an electronic scale. Mr. Fuller moved to suppress this evidence on fourth amendment grounds, but the district court denied the motion. In reviewing a district court's denial of a motion to suppress, we review its findings of fact for clear error and its application of law *de novo*. *See United States v. Payne*, 119 F.3d 637, 641 (8th Cir. 1997), *cert. denied*, 522 U.S. 987 (1997).

Mr. Fuller first argues that the police did not have reasonable suspicion to stop his stepson. The stop of Mr. Fuller's stepson (as opposed to the subsequent search of the van) actually raises two potential fourth amendment difficulties. First, there was the stop of the stepson himself, which implicates his right to be free from random, unauthorized investigatory seizures. *Cf. United States v. Green*, 275 F.3d 694, 699 (8th Cir. 2001). Because this right belongs to the stepson, Mr. Fuller cannot complain about its violation. *See United States v. Lloyd*, 36 F.3d 761, 764 n. 2 (8th Cir. 1994), *cert. denied*, 514 U.S. 1009 (1995); *see also Minnesota v. Carter*, 525 U.S. 83, 92 (1998) (Scalia, J., concurring). Second, there was the stop and detention of the van itself, which implicates the right to be secure from unreasonable seizures of "effects." *See* U.S. Const. amend. IV. The question thus arises whether Mr. Fuller had a sufficient interest in the van to assert a fourth amendment claim with regard to its stop.

Based on the factual findings of the district court, in which we find no clear error, we conclude that Mr. Fuller did indeed have a substantial property interest in the van. Although the title to the van bore the name of his wife, Mr. Fuller made all of the payments on it, regularly drove it to work, controlled the keys, and otherwise exercised regular dominion over it. On the night in question, he had allowed his stepson to drive the van, but this was a rare occurrence. These are considerations that support a determination that an individual has fourth amendment rights in an object. *See Payne*, 119 F.3d at 641.

Though Mr. Fuller had a substantial property interest in the van, he had entrusted the van to another person and that is an important consideration in evaluating his fourth amendment claim. Indeed, we believe that it is determinative. We think that the closest analogies to the current case are provided by cases involving packages that government investigators stop in transit. Like Mr. Fuller's van, the packages in these cases are "effects" protected by the fourth amendment that have been entrusted to the care of a third party, and the issue is the extent of the bailor's fourth amendment rights in the object while it is in the third party's care. These cases involve three kinds of detention by state officials subject to three different levels of constitutional scrutiny.

If a government investigator merely observes the outside of a package or lifts it from a conveyor belt and handles it briefly for inspection, then there is no seizure for fourth amendment purposes, and the government action is subject to no scrutiny at all. *See United States v. Gomez*, 312 F.3d 920, 923 (8th Cir. 2002). When the government removes a package from the mail stream and takes it to another part of a mail processing facility for more thorough inspection, generally by a drug-sniffing dog, then it has conducted a stop subject to constitutional scrutiny. *See United States v. Morones*, 355 F.3d 1108, 1111-12 (8th Cir. 2004). This kind of stop is analogous to a so-called *Terry* stop and must be supported by reasonable suspicion. *See Gomez*,

312 F.3d at 923-24 (citing generally *Terry v. Ohio*, 392 U.S. 1 (1968)). Finally, there are full-fledged seizures, where the government asserts "dominion and control over the package and its contents." *United States v. Jacobsen*, 466 U.S. 109, 120 (1984). These seizures must be supported by probable cause. *See id.* at 121-22.

Applying these principles to Mr. Fuller's van, we conclude that the stop of the vehicle did not implicate his constitutional rights at all. A person who lends an automobile to another of course does not give up his or her fourth amendment interest altogether. The lender's right to possession when the bailment terminates, for instance, is a valuable property right. On the other hand, the lender's right to control the property during the bailment is greatly diminished, and he or she no longer has a reasonable expectation of a possessory interest in it for a time. When Mr. Fuller lent the van to his stepson, he gave up any significant expectation related to controlling its movement. Indeed, while his stepson had control of the van, it would of necessity move from place to place and start and stop at intervals in ways that were completely beyond Mr. Fuller's control. Of course, he had a reasonable expectation that his stepson would maintain general control of the van, but this expectation is quite different from the stepson's own expectation in minute-to-minute control of the vehicle while driving. It is important to realize that a person's interest in his or her loaned effects is not identical to the possessory interest of the bailee who has direct control of the effects, and the lender cannot assert the bailee's independent fourth amendment right to have the bailee's interest protected from unreasonable government interference.

A brief stop by the police of a loaned automobile being driven by a third party does not significantly impair the interests of the person who lent the automobile. We think that such stops are like those that occur when postal inspectors pick up packages and examine them without more decisively removing them from the rest of the mail. The burden that such stops impose on the bailor's interest, if burden at all, is too slight to amount to a fourth amendment seizure. *Cf. Gomez*, 312 F.3d at 923.

-4-

So that there is no confusion about our holding, we point out that where a party is asserting his or her personal right to be free from government seizure, a different standard applies. For example, had Mr. Fuller been driving the van when it was stopped, the case would be governed by *Terry*, and the police would need to demonstrate that they had a reasonable suspicion. In this case, however, the only rights of his that are implicated in the stop are his rights in the van itself.

Mr. Fuller also challenges the voluntariness of his stepson's consent to search the van, and we assume, for the purpose of this discussion only, that he has retained a sufficient property interest in the loaned van to raise an objection to a search of it. The courts have long held that a person can challenge a search of his or her property consented to by another who had the right to consent. *See Illinois v. Rodriguez*, 497 U.S. 177, 179-81 (1990). The voluntariness of a consent is a question of fact to be determined from the totality of the relevant circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973). Reviewing the record, we cannot say that the district court's finding that the stepson's consent was voluntary was clearly erroneous. Mr. Fuller points out that the police officer making the request was holding the stepson's driver's license at the time and that there were three armed police officers present. These facts are insufficient to establish clear error on the part of the district court. The stepson was eighteen years old at the time, a high school graduate, and there is no evidence that the police threatened or coerced him.

Because we reject Mr. Fuller's challenge to the search of the van, we also reject his challenge to evidence obtained as a result of that search. The search was valid, and thus the evidence cannot be excluded as the fruit of a poisonous tree. *See United States v. Rodriguez*, 367 F.3d 1019, 1027 (8th Cir. 2004).

II.

Mr. Fuller also challenges the sufficiency of the evidence supporting his conviction on the drug charges. He was charged with conspiring with his stepson and

others to distribute at least 50 grams of a substance containing crack, *see* 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846, aiding and abetting his stepson to possess with an intent to distribute at least 50 grams of a substance containing crack, *see* 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 18 U.S.C. § 2, and possessing at least 5 grams of a substance containing crack with the intent to distribute it, *see* 21 U.S.C. § 841(a)(1), (b)(1)(B). In reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and accept all reasonable inferences that support it. *United States v. Sheikh*, 367 F.3d 756, 763 (8th Cir. 2004). We will reverse only if no reasonable jury could have found Mr. Fuller guilty beyond a reasonable doubt. *Id.*

At trial, an officer testified that he observed Mr. Fuller exchange a large plastic bag with his stepson for a substantial amount of cash. The bag, which contained over 100 grams of crack cocaine, was almost immediately recovered by the police from the stepson. A later search of the van that Mr. Fuller's stepson was driving revealed an automatic weapon and additional crack. There was certainly enough evidence in the trial record to support the guilty verdict.

Mr. Fuller relies on the fact that the jury acquitted his stepson, who was tried with him, to support the conclusion that there was insufficient evidence for the verdict that he conspired with and aided and abetted his stepson. But it is well established that inconsistent verdicts on the same indictment as to the same defendant are unobjectionable. *See United States v. Powell*, 469 U.S. 57, 62-63 (1984). For example, in *Powell*, *id.* at 69, the Supreme Court upheld the defendant's conviction for using a telephone in the course of a conspiracy even though she was acquitted of the conspiracy itself. The rationale for this rule lies in the unique place of the jury in our criminal law. According to Blackstone, the purpose of the jury at common law was to place a "strong ... barrier ... between the liberties of the people, and the prerogative of the crown." 4 William Blackstone, Commentaries *343. The ideal of the jury as an independent decision-maker in criminal cases is prominent on our law,

most notably perhaps in the double jeopardy clause, which protects jury acquittals from subsequent attack.

The same reluctance to compromise the independence of the jury by inquiring into its deliberations underlies the rule that inconsistent verdicts are not objectionable. Mr. Justice Holmes pointed out that when a jury renders inconsistent verdicts, there is no way of knowing whether the verdict of acquittal or conviction reflects the jury's true conclusions, and the inconsistency may be the result of confusion or lenity on the part of the jury. *See Dunn v. United States*, 284 U.S. 390, 393-94 (1932). So long as the guilty verdict is supported by sufficient evidence, courts have no cause to interfere. *See id.* at 392-94. As we have said, there is more than ample evidence in the record to support a guilty verdict here, and we discern no barrier to applying the usual rule to a case of inconsistent verdicts that occurs when accused co-conspirators are tried together.

III.

Mr. Fuller asserts that the district court erred in not granting him a downward adjustment under the United States Sentencing Guidelines for acceptance of responsibility. *See* U.S.S.G. § 3E.1.1. The commentary to § 3E.1.1 states that "[t]his adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial." U.S.S.G. § 3E.1.1 comment. (n.2). There are of course exceptions to this general rule (most notably defendants who go to trial in order to preserve some constitutional challenge), *see id.*, but, as we have previously observed, "[i]n practice ... holding the government to its burden of proving the defendant's factual guilt presents a near absolute bar to a defendant receiving a reduction under this section," *Chapman*, 356 F.3d at 848. Mr. Fuller argues that at trial he testified to dealing drugs and did not essentially contest the government's case. But he pleaded not guilty to the indictment, extensively cross-examined government witnesses, contested the quantity of drugs possessed, and denied conspiring with his co-

defendant. Accordingly, we find no error in the district court's conclusion on this point.

IV.

In his lengthy *pro se* brief, Mr. Fuller raised various other issues. We find that all of these points are either without merit or inappropriate for resolution on direct appellate review.

Affirmed.

_____