# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1913

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| Carlos R. Brandon, | * |
| | * |
| Appellant. | * |

_____

No. 07-2031

_____

Appeals from the United States
District Court for the
Western District of Missouri.

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| Dayron T. Johnson, | * |
| | * |
| Appellant. | * |

_____

Submitted: January 16, 2008
Filed: April 7, 2008

_____

Before COLLOTON and SHEPHERD, Circuit Judges, and ERICKSON,[1] District Judge.

_____

SHEPHERD, Circuit Judge.

After a shooting and two car chases, officers of the Kansas City, Missouri Police Department arrested several members of a crack cocaine distribution ring. Two of the ring members, Carlos Brandon and Dayron Johnson, are before us to challenge their convictions and sentences of life imprisonment. Brandon was convicted of conspiracy to distribute cocaine base, possession with intent to distribute cocaine base, and possession of firearms in relation to a drug trafficking crime. Johnson was convicted of conspiracy to distribute cocaine base, distribution of cocaine base, possession with intent to distribute cocaine base, being a felon in possession of a firearm, and possession of a firearm in relation to a drug trafficking crime.

Upon review of the arguments and record, we find no error except for the imposition of a concurrent life sentence on one of Brandon's convictions. In all other respects, we affirm the judgments of the district court.[2]

I.

This summary of the facts reflects our view of the evidence in the light most favorable to the verdicts. See United States v. Grover, 511 F.3d 779, 781-82 (8th Cir. 2007).

_____

[1] The Honorable Ralph R. Erickson, United States District Judge for the District of North Dakota, sitting by designation.

[2] The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

-2-

In June of 2004, Darneice Johnson and her ten-year-old daughter moved into a house at 4406 Wayne Avenue in Kansas City, Missouri. Jessie Andrews was a drug dealer and the father of Ms. Johnson's[3] daughter. Andrews had been involved in some shootings and needed a safe place to stay that summer. Even though the two were no longer together romantically, Ms. Johnson allowed Andrews to spend the nights at her home, sleeping in their daughter's bedroom.

Ms. Johnson worked two shifts per day and was not home much. Andrews soon had the run of the house. He kept ecstasy, marijuana, and cocaine there, and about 20 firearms in the basement. He put tens of thousands of dollars from drug sales in a small file cabinet. In the kitchen, he would cook the cocaine into crack ("cocaine base"). Brandon and his girlfriend also moved into the house that summer. Brandon was a longtime friend of Andrews and Ms. Johnson. Ms. Johnson's cousin, Johnson, was also a friend of Andrews and visited almost daily.

On September 13, 2004, Kansas City police officers responded to a report of a shooting at 4406 Wayne Avenue. There were spent gun shell casings and blood on the front porch of the house. Inside the house were guns, broken glass, and bullet holes. The officers cleared five occupants from the house, who gave their names as Marcus Noel, Darneice Johnson, Jamalla Andrews, Maria Lopez, and Carlos Brandon. "Marcus Noel" was a pseudonym given by Johnson; he had been shot in the foot and was transported to a hospital. After the police obtained a search warrant, crime scene technicians recovered seven handguns, a carbine, three assault rifles, 159 grams of cocaine base, 365 grams of powder cocaine, ammunition, and $70,257.96 in cash.

Detective Darla Harris investigated the shooting by attempting to follow up with the individuals who gave their names on September 13. She sent letters to 2723

---

[3] In this opinion, the Appellant Dayron T. Johnson is referred to as "Johnson" and cooperating witness Darneice Johnson is referred to as "Ms. Johnson."

Forest Avenue, the address that "Marcus Noel" had given, but the letters were returned. On September 27, she went to the address, and saw a person come from the residence and lean into a vehicle, which she interpreted as indicative of a narcotics transaction in progress. Harris then arranged for a confidential informant to make a controlled buy of narcotics from the residence at 2723 Forest. Based on the controlled buy, Harris and her partner Don Stanze procured a warrant to search the residence, which they planned to execute on September 29.

As officers prepared to serve the search warrant, a white SUV pulled up to 2723 Forest Avenue. Its occupants briefly entered the residence, and then returned to the SUV and departed. Advised that the vehicle was wanted in connection to a possible homicide, Sergeant Charles Huth pulled up behind the SUV and attempted to stop it. The SUV accelerated and struck a traffic sign as it turned. The SUV dodged into an alley, and was finally halted by a large piece of heavy equipment that blocked its path. The passenger appeared to throw out a gun, then he and the driver fled on foot.

Sergeant Huth chased the passenger and caught him by discharging a Taser. Another officer placed the passenger in handcuffs and searched him for weapons. A Missouri identification card in the passenger's pocket revealed him to be Brandon. The officer found plastic baggies in Brandon's pants pocket, containing substances that were later determined to be 37.92 grams of cocaine base and 12.03 grams of cocaine. The police found 13.85 grams of cocaine in the ashtray of the SUV and recovered a handgun and a loaded assault rifle from the alley, next to the SUV. The police also apprehended William Carter, the other occupant of the SUV.

Detectives of the Kansas City Police Department continued to investigate drug crimes related to the September 13 shooting. Based on information they received from a confidential informant, on December 8, 2004, Detectives Stanze and Harris arranged for a controlled buy of cocaine base. As the detectives watched from a surveillance position, the informant purchased 1.75 grams of cocaine base from an

occupant of a Nissan Altima. After the purchase, the informant told Stanze that he had seen a handgun and an assault rifle in the car. With that information, Detective Stanze directed nearby officers to stop the vehicle and detain its occupants.

The Nissan led the officers on another chase, hitting a police van before getting high-centered on a small tree. Then Johnson stepped out of the passenger side of the car, holding a handgun with a long magazine. An officer yelled "Gun!" Johnson threw the gun back into the car and ran, but was soon arrested. Phillip Ellis, the driver of the Nissan, was also arrested. In the car were 52.42 grams of cocaine base, two semiautomatic handguns, and an assault rifle. Referring to an unmarked police vehicle, Johnson spontaneously asked who was in the blue Ford Explorer. Then he remarked that he wished he could have caught them alone, and would have "start[ed] busting" or "unloaded" on them, but that the officers "ride too deep." Officers who heard these comments interpreted them as Johnson's intention to shoot at the police.

II.

A grand jury indicted Brandon and Johnson, along with Andrews, Carter, Ellis, and Ms. Johnson, with conspiracy to distribute and possess with intent to distribute 50 grams or more of cocaine base and some amount of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(iii), 846 (Count One). The grand jury charged ten other crimes, which we group according to the dates they allegedly occurred: the September 13 charges (Counts Two through Four); the September 29 charges (Counts Five through Seven); and the December 8 charges (Counts Eight through Eleven).

Brandon, Johnson, and Andrews were indicted for the September 13 charges, which alleged, Counts Two through Four: (2) possession with intent to distribute 50 grams or more of cocaine base, 21 U.S.C. § 841(a)(1), (b)(1)(A)(iii); (3) possession with intent to distribute cocaine, 21 U.S.C. § 841(a)(1); and (4) possession of 12 firearms in relation to drug trafficking crimes, 18 U.S.C. § 924(c)(1)(A). These

charges all related to the drugs and guns found at 4406 Wayne Avenue after the shooting on September 13, 2004.

Brandon and Carter were indicted for the September 29 charges, all arising from the white SUV chase. Counts Five through Seven alleged: (5) possession with intent to distribute five grams or more of cocaine base, 21 U.S.C. § 841(a)(1), (b)(1)(B)(iii); (6) being a felon in possession of two firearms which had been transported in interstate commerce, 18 U.S.C. § 922(g)(1); and (7) possession of two firearms in relation to a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A).

Similarly, Johnson and Ellis were indicted for the December 8 charges, all arising from the Nissan Altima chase. Johnson was charged with Counts Eight through Eleven, which alleged: (8) distribution of a mixture or substance containing a detectable amount of cocaine base, 21 U.S.C. § 841(a)(1); (9) possession with intent to distribute a mixture or substance containing a detectable amount of cocaine base, in an amount of 50 grams or more, 21 U.S.C. § 841(a)(1), (b)(1)(A)(iii); (10) being a felon in possession of a firearm which had been transported in interstate commerce, 18 U.S.C. § 922(g)(1); and (11) possession of a firearm in relation to a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A). Ellis was indicted on the drug charges, Counts Eight and Nine.

Prior to trial, the Government informed the district court that Brandon had two previous felony convictions for possession of cocaine base, and that Johnson had three previous felony convictions for possession of cocaine base. See 21 U.S.C. § 851(a). Each of the convictions had been entered in the courts of the State of Missouri. Due to these prior convictions, the statutory minimum penalty for Counts One, Two, and Nine was life imprisonment. 21 U.S.C. § 841(b)(1)(A). The statutory minimum penalty for Count Five was increased to ten years to life imprisonment. 21 U.S.C. § 841(b)(1)(B).

Brandon, Johnson, and Carter were tried before a jury. The other three indictees had entered into plea agreements and agreed to testify at the trial. At the trial, Ms. Johnson and Andrews detailed Brandon and Johnson's involvement in the drug and gun activities at 4406 Wayne Avenue. Ellis testified as to Brandon's and Johnson's activities there, said that he drove around with Johnson to sell cocaine, and described the car chase on December 8, 2004.

After he testified, Ellis wrote a note to Brandon from jail stating that he had lied during parts of his testimony. All defendants moved for a mistrial; the motion was denied. Ellis was recalled and corrected his testimony, explaining that Brandon was responsible for more drugs than Ellis had previously testified. Ellis further corrected his testimony to explain that both Brandon and Johnson possessed a greater variety of firearms than he had previously described. On cross-examination, Ellis admitted that he had lied in his previous testimony.

Fifteen law enforcement officers testified about the suspects, drugs, guns, and car chases. On direct examination, one of the police officers who pursued Brandon in the white SUV chase mentioned that, "it was also related at that time that the vehicle was wanted in regards to a possible homicide." The district court had entered an order in limine to exclude any reference to any homicide investigation or any potential suspects in a homicide investigation. Brandon's lawyer moved for a mistrial; Johnson's did not. The court denied the motion, but instructed the jury to disregard any testimony it heard "regarding any potential crimes which are not involved in this case which are not alleged in this case by the United States."

The jury found Brandon guilty of Count One—conspiracy to distribute and possess with intent to distribute 50 grams or more of cocaine base and some amount of cocaine, Count Five—possession with intent to distribute five grams or more of cocaine base, and Count Seven—possession of two firearms in relation to a drug trafficking crime. It found Johnson guilty of Count One, Count Eight—distribution

of a mixture or substance containing a detectable amount of cocaine base, Count Nine—possession with intent to distribute a mixture or substance containing a detectable amount of cocaine base, in an amount of 50 grams or more, Count Ten—being a felon in possession of a firearm, and Count Eleven—possession of a firearm in relation to a drug trafficking crime. On Count One, the jury made a special finding that Johnson possessed 50 grams or more of cocaine base, but no cocaine. Verdicts of not guilty were returned on Counts Two, Three, Four, and Six. William Carter was acquitted on all counts.

Brandon's presentence investigation report calculated that his total offense level was 34 and his criminal history category was VI, which it stated would lead to a Sentencing Guidelines range of 262 to 327 months if not for the statutory minimum life sentence on Count One. Count Seven, a firearm charge, required a consecutive sentence of five years. At the sentencing hearing, the district court commented that "Mr. Brandon's sentencing exposure is life imprisonment on Counts One and Five and not less than ten years or more than life on Count Five plus five years consecutive as a result of the conviction on Count Seven." Without discussing the Guidelines range for Count Five, the court sentenced Brandon to concurrent terms of life imprisonment on Counts One and Five, and a consecutive term of five years on Count Seven.

As for Johnson, the district court remarked that "there is no authority for me to do anything other than impose the mandatory life sentence and the five-year consecutive sentence." Johnson received a life sentence on Counts One and Nine and ten years on Count Ten, to be served concurrently. Five years, to be served consecutively, were added for the Count Eleven firearm conviction.

III.

On appeal, Brandon asserts that the Government failed to prove the Count One conspiracy, that the district court should have declared a mistrial, and that he was

erroneously given a life sentence on Count Five. Johnson claims error in the admission of evidence, the denial of his motions for a mistrial, and the use of his state-court convictions to enhance his sentence to life imprisonment. We consider each of these arguments.

## A.

To sustain the verdict that Brandon is guilty of the Count One drug conspiracy, the government must have established beyond a reasonable doubt (i) that there was a conspiracy, that is, an agreement to distribute the drugs and possess the drugs with intent to distribute them, (ii) that Brandon knew of the agreement, and (iii) that Brandon knowingly joined the conspiracy. United States v. Hakim, 491 F.3d 843, 846 (8th Cir. 2007). We review the sufficiency of the evidence *de novo*, viewing the evidence in the light most favorable to the verdict. Grover, 511 F.3d at 781-82. The verdict will be upheld if there is any interpretation of the evidence that could lead a reasonable jury to convict. Hakim, 491 F.3d at 845.

Brandon asks us to dismantle the verdict by ignoring large portions of the evidence against him. He asserts that the jury rejected all evidence relating to the September 13 search at 4406 Wayne Avenue because it acquitted him of the September 13 charges. Because there was no evidence that the drugs found after the SUV chase came from an alleged co-conspirator, Brandon reckons that his conviction "rests on the almost absurdly general, unsubstantiated claims of Ms. Johnson . . . ." Her testimony is so incredible, he urges, that the jury's verdict is necessarily the result of speculation and must be reversed.

Mindful of our standard of review, our inspection of the jury's decision does not touch the spots that Brandon attacks as infirm. Even if the verdicts on Count One and the September 13 charges were rationally irreconcilable, we would have no power to overturn either of them. United States v. Powell, 469 U.S. 57, 62-63 (1984); see

United States v. Fuller, 374 F.3d 617, 623 (8th Cir. 2004) (discussing rule that "inconsistent verdicts on the same indictment as to the same defendant are unobjectionable"). Neither will we interfere with a jury that appears to base its verdict on inconsistent evaluations of the same evidence. Fuller, 374 F.3d at 623 (upholding conviction of aider and abettor when the principal defendant was acquitted). Contrary to Brandon's suggestions, we cannot omit the products of the September 13 search from our review for sufficiency of the evidence.

Likewise, we rarely scrutinize a jury's decision to rely on the testimony of the trial witnesses. See United States v. Crenshaw, 359 F.3d 977, 988 (8th Cir. 2004) (discussing rejection only of "physically impossible" assertions). Ms. Johnson, Andrews, and Ellis described Brandon's involvement in the Count One conspiracy. In addition, the Government offered the testimony of the law enforcement witnesses and the physical evidence recovered at 4406 Wayne Avenue and from Brandon's arrest. Once it found the evidence to be credible, a reasonable jury would have no trouble concluding that a conspiracy existed and that Brandon intentionally joined it. We affirm the conviction.

B.

Johnson assigns error to the district court's admission of his post-arrest statement, protesting that the statements were irrelevant character evidence, inadmissible under Rule 404(b) of the Federal Rules of Evidence. In the alternative, Johnson argues that the probative value of the statements was substantially outweighed by the possibility of unfair prejudice. Fed. R. Evid. 403. We review a district court's evidentiary ruling for an abuse of discretion. United States v. Guerrero-Cortez, 110 F.3d 647, 652 (8th Cir. 1997).

We cannot forget that Johnson was being tried for the possession of a firearm on December 8, the day of the Nissan Altima chase. Once Johnson pleaded "not

guilty," the Government was compelled to prove the firearm charges beyond a reasonable doubt. A jury could conceivably have doubts about whether the weapons belonged to Phillip Ellis, the driver of the Nissan. To resolve those doubts, the jury could interpret Johnson's statements as an admission that he had a gun. Thus, the statements were relevant and admissible to identify Johnson as the possessor of a firearm. See Fed. R. Evid. 404(b) ("Evidence of other crimes, wrongs, or acts . . . may, however, be admissible for . . . proof of. . . identity.").

Similar considerations imbue our analysis under Rule 403, which allows a district court to exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403. Unfair prejudice does not refer to the legitimate probative force of the evidence, but rather its capacity to lure a jury into declaring guilt for an improper reason. See United States v. Jiminez, 487 F.3d 1140, 1145 (8th Cir. 2007). Coupled with testimony that Johnson led the police on a dangerous chase and emerged from the vehicle with a firearm, the added prejudicial effect of the "start busting" comment was negligible. On the other hand, the probative value of identifying Johnson was high, because it resolved doubts about whether Johnson or Ellis emerged from the vehicle with a firearm. The balance falls in favor of admission; there was no abuse of discretion.

C.

Both Brandon and Johnson[4] argue that a mistrial should have been granted when the police officer referred to a "possible homicide" in connection to the white SUV. Johnson separately argues that his right to a fair trial was violated by the admission of Phillip Ellis's false testimony. It is generally within the discretion of the district court to decide whether the fairness of a trial has been compromised by

---

[4] During the trial, Johnson did not object to the statements or move for a mistrial; the result we reach, however, would be the same under a plain error standard.

-11-

prejudicial testimony in violation of an order in limine.  United States v. Urick, 431 F.3d 300, 304 (8th Cir. 2005).  As such, the district court's decision to deny a motion for a mistrial is reviewed for an abuse of discretion.  Id.

Admission of a prejudicial statement is normally cured by striking the testimony and instructing the jury to disregard the remark.  Id.  When the evidence of guilt is substantial, we may find that the allegedly improper testimony was harmless.  United States v. Nelson, 984 F.2d 894, 897 (8th Cir. 1993).  Brandon suggests that the officer's remarks indicated a conscious desire to get prejudicial information in front of the jury, but the record does not support this characterization.  Cf. United States v. Beeks, 224 F.3d 741, 746 (8th Cir. 2000) (reviewing the record to reject the Government's "facile explanation" of why it violated an order in limine).  On the contrary, the officer explained that the United States Attorney instructed him not to mention any homicide investigation, but he made a mistake.  The district court swiftly took corrective action by issuing a curative instruction.  Corrective action was also taken for the Ellis misstatements—Ellis was recalled, and admitted that he had lied by not fully stating the extent of the defendants' criminal activity.  The jury was able to account for Ellis's misstatements in its credibility determinations.

Having thoroughly reviewed the trial record, we find that the corrective actions of the district court were adequate to cure the prejudicial effect of the "possible homicide" statements and Ellis's false testimony.  Any residual prejudice that may have survived the curative actions was harmless when compared to the very strong evidence of Brandon and Johnson's guilt.  See Nelson, 984 F.2d at 897.  We affirm the denial of the motions for mistrial.

D.

Johnson received mandatory life sentences for Counts One and Nine, based on the information of prior felony convictions filed by the Government.  See 21 U.S.C.

§§ 841(b)(1)(A), 851. On appeal, he requests that we declare the mandatory minimum life sentence of section 841(b)(1)(A) unconstitutional under the equal protection guarantees of the Fifth Amendment. Johnson contends that, though the possession of "user amounts" of cocaine base was punishable as a felony in state court, it would not have been punishable as a felony in federal court. There is no rational basis, he argues, for imposing a mandatory minimum sentence on those defendants who were previously convicted under Missouri law, but not on those convicted under federal law.

Our decision in United States v. Curtis, 965 F.2d 610 (8th Cir. 1992), squarely addresses Johnson's equal protection argument. In Curtis, the defendant argued that his sentence should not be enhanced due to a prior Illinois conviction for the possession of methalqualone. Id. at 614. He claimed that other states, such as Iowa, California, and New York, classified the same offense as a misdemeanor, resulting in an unconstitutional disparity of sentences. Id. We held that the sentencing disparity did not violate the defendant's right to equal protection because the heavier penalty served Congress's legitimate purpose of "deterring repeat offenders and segregating repeat offenders from the rest of society" for long periods of time. Id. at 615; see also United States v. Collins, 340 F.3d 672, 679-80 (8th Cir. 2003) (reiterating that mandatory life sentences for drug offenses after two prior felony convictions do not violate the Eighth Amendment). Obliged to follow Curtis, we affirm Johnson's sentence.

E.

Unlike his punishment for Count One, Brandon's concurrent life sentence on Count Five was not mandatory. Perhaps due to an oversight by the district court, the Guidelines range was not calculated, and the sentence was imposed without any discussion of the sentencing factors of 18 U.S.C. § 3553(a) or explanation of why a life sentence was chosen. Brandon did not object to these errors, and because they are

procedural in nature, we may only review for plain error. United States v. Burnette, No. 07-1476, 2008 U.S. App. LEXIS 5154, at *7 (8th Cir. Mar. 11, 2008); see Gall v. United States, 128 S. Ct. 586, 596-97 (2007) (listing procedural errors). Under plain error review, Brandon must prove that (1) there was an error, (2) the error was plain, (3) it affects substantial rights, and (4) it seriously affects the fairness, integrity, or public reputation of judicial proceedings. Burnette, 2008 U.S. App. LEXIS 5154, at *10.

Given the lack of a Guidelines calculation, reference to the section 3553(a) factors, or explanation of the reason for choosing a life sentence, an error existed and was plain. See United States v. Guarino, No. 07-2350, 2008 U.S. App. LEXIS 4373, at *4 (8th Cir. Feb. 29, 2008). Substantial rights are affected if he would have received a more favorable sentence absent the error. Id.; see United States v. Pirani, 406 F.3d 543, 552 (8th Cir. 2005) (en banc). Assuming that the presentence investigation report correctly stated that the Guidelines range was 262 to 327 months, there is a reasonable probability that, but for this error, Brandon would have received a lighter sentence on Count Five. Because substantial rights were affected, we turn to the fourth factor.

To allow a procedural oversight to increase a sentence from a fixed term to life imprisonment would undermine the public's confidence in the fairness and integrity of criminal sentencing process. See United States v. Warren, 361 F.3d 1055, 1059 (8th Cir. 2004). Consequently, we remand the sentence on Count Five for resentencing. Because there do not remain any factual issues in dispute, we instruct the district court to resentence Brandon on the existing record. See United States v. Kendall, 475 F.3d 961, 964 (8th Cir.), cert. denied, 127 S. Ct. 2954 (2007) (favoring specificity in remands for resentencing).

## IV.

For the foregoing reasons, we vacate the sentence imposed on Carlos Brandon on Count Five of the Second Superseding Indictment and remand for resentencing on the existing record. In all other respects, the judgments as to Brandon and Dayron Johnson are affirmed.

_____