# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 07-3645

———————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| Federico Juan Negrete, aka | * | |
| Juan Federico Gonzalez, | * | |
| | * | |
| Appellant. | * | |

———————

Submitted: June 10, 2008
Filed:  August 11, 2008

———————

Before SMITH, BOWMAN, and GRUENDER, Circuit Judges.

———————

SMITH, Circuit Judge.

Federico Juan Negrete was convicted, following a jury trial, of conspiracy to distribute less than 50 kilograms of marijuana, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(D). The district court[1] sentenced Negrete to 44 months' imprisonment. Negrete appeals, arguing that the district court erred in applying enhancements for Negrete's role in the offense and for obstruction of justice. We affirm.

---

[1]The Honorable John A. Jarvey, United States District Judge for the Southern District of Iowa.

## I. *Background*[2]

Federico Negrete arranged for the delivery of 38.1 kilograms of marijuana to Iowa from California. To accomplish his objective, Negrete enlisted the help of others to transport the drugs, including Juan Ramirez. Prior to the trip, Ramirez asked Eduardo Macias to accompany him to Negrete's car wash. While at the car wash, Negrete and Ramirez met. Macias did not attend the meeting, but he did see Negrete give Ramirez a slip of paper containing a phone number for Alexander Espinoza-Chavez, a long-time associate of Negrete's.

Ramirez asked Macias to take him to Iowa, but according to trial testimony, Macias was unaware of the presence of drugs in the vehicle. Macias discovered the drugs in the trunk of his car when the pair stopped at a hotel in Wyoming to rest. Macias knew no drugs were in his car before he went to Negrete's car wash. Unwilling to drive knowing that drugs were present, Macias refused to continue the trip.

Ramirez then contacted Espinoza-Chavez and reported the status of the trip. Espinoza-Chavez agreed to come meet them and make alternative arrangements to complete the trip to Iowa. On his way, Espinoza-Chavez had car trouble in Omaha, Nebraska, and he summoned help. Macias and Ramirez drove to Omaha to pick up Espinoza-Chavez. When they got there, Macias and Ramirez noticed that Espinoza-Chavez was traveling with his fourteen-year-old son. The group traveled to Bettendorf, Iowa, where Espinoza-Chavez rented two adjoining rooms at the Quad City Lodge.

While staying at the lodge, Ramirez pressed Espinoza-Chavez to remove the drugs from Macias's trunk so that Ramirez and Macias could return to California. Espinoza-Chavez removed the drugs from the trunk and placed them in his hotel

---

[2]The facts are set out in the light most favorable to the verdict. *See United States v. Brandon*, 521 F.3d 1019, 1025 (8th Cir. 2008).

room. Espinoza-Chavez, however, lost the keys to Macias's car, and because it was a holiday, attempts to replace the key proved unsuccessful.

Also, around this time, Negrete arrived in Iowa along with another associate. Espinoza-Chavez and his son picked them up from the airport, and on their return from the airport, they also towed back a less-than-road-worthy Chevrolet Blazer. While, they were attempting to repair the Blazer, police officers drove by, looking for an unrelated fugitive. The officers' suspicions were aroused by the group's reaction to their presence, so the officers called in the Blazer's license number to dispatch and discovered that the vehicle was registered to an individual with a warrant for his arrest.

After receiving this information, police returned to the hotel to further investigate. When they returned, they discovered that Negrete and another individual were gone. Negrete had gone to Espinoza-Chavez's room and escaped through the bathroom window. Before leaving, Negrete attempted to persuade Espinoza-Chavez's son to come with him because there were police officers on the premises, but the young man refused, so Negrete escaped alone. After escaping, Negrete checked out of his room at a nearby La Quinta Inn and found a new room at the Days Inn. A few hours later, he left this second motel room and returned to California.

Police identified the other individuals at the hotel as Ramirez, Espinoza-Chavez, and Macias. While investigating the registered owner of the Blazer, police searched Espinoza-Chavez's room and discovered large quantities of drugs. The officers seized the drugs and Macias's and Ramirez's cellular telephones. Investigators confirmed that those cellular phones had traveled from Stockton, California, to Bettendorf, Iowa, through examination of the cell site tower records.

Eventually, police were able to identify Negrete and arrested him at his car wash in California nearly six months later. Negrete admitted being the person who

escaped through the motel window but denied any knowledge of a marijuana conspiracy. Negrete testified at trial that he only came to Iowa to "party" with Espinoza-Chavez and that it was not until he arrived that he became suspicious about what was going on. Negrete testified that he left the hotel after seeing the drugs and the police officers, but he was adamant that he was unaware of the drug conspiracy and was not involved.

The jury found Negrete guilty of conspiracy, and at sentencing, the district court applied sentencing enhancements for his role in the offense and for obstruction of justice. In applying the obstruction of justice enhancement, the district court relied on its finding that Negrete committed perjury. After calculating Negrete's advisory sentencing range, the district court sentenced him, within that range, to a term of 44 months' imprisonment.

## II. *Discussion*

In this appeal, Negrete challenges his sentence, arguing that the district court's application of the role-in-offense and obstruction-of-justice enhancements constituted reversible error. We disagree and affirm.

### A. *Role-in-Offense Enhancement*

Negrete challenges the district court's application of a two-point enhancement under U.S.S.G. § 3B1.1. He argues that there was insufficient evidence to prove that he was an organizer, leader, manager, or supervisor in this criminal conspiracy.

We hold that the district court's role enhancement is sufficiently supported by the evidence presented at trial. Negrete's arguments for reversal ask this court to ignore the reasonable inferences from the record evidence. *See Brandon*, 521 F.3d at 1025 (requiring the court, in challenges to the sufficiency of the evidence, to examine the facts in the light most favorable to the verdict). Here, the evidence adduced at trial indicated that Negrete both organized the drug transport and that he also directed the

appropriate route. His supervisory status is further confirmed by his travel to Iowa to address problems with the drug transport. Given these facts, the district court did not clearly err in finding, by a preponderance of the evidence, that Negrete was an organizer, leader, manager, or supervisor in this criminal conspiracy.

### B. *Obstruction-of-Justice Enhancement*

Negrete also challenges the application of a two-point enhancement under U.S.S.G. § 3C1.1, arguing that there is insufficient evidence to prove that he committed perjury. Negrete further contends that the enhancement violated his constitutional rights under the Fifth and Sixth Amendments.

"U.S.S.G. § 3C1.1 provides for a two level enhancement for obstruction of justice if the defendant has committed perjury or suborned perjury by another witness." *United States v. Whiting*, 522 F.3d 845, 849 (8th Cir. 2008). Furthermore, "[a] defendant commits perjury by testifying falsely under oath in regard to a material matter and by doing so willfully, rather than out of confusion, mistake, or faulty memory." *Id.* at 849–50; *see also* U.S.S.G. § 3C1.1(B) (stating that in order for the enhancement to apply, "the obstructive conduct [must] relate[] to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense . . .").

### 1. *Perjury and Negrete's Right to Testify*

Negrete argues that the district court's application of the enhancement burdens his Fifth and Sixth Amendment rights because the application of such an enhancement would chill his right to testify. *See Frey v. Schuetzle*, 78 F.3d 359, 361 (8th Cir. 1996) (recognizing the right to testify as having its origins in the Due Process Clause and the Sixth Amendment's Compulsory Process Clause).

We have held, however, that if the district court finds, by a preponderance of the evidence, that the defendant committed perjury, such a finding is a sufficient basis to support the obstruction of justice enhancement. *United Sates v. Flores*, 362 F.3d

1030, 1037 (8th Cir. 2004). In light of the defendant's testimonial rights, the sentencing court must conduct an independent evaluation of the evidence and decide whether the defendant has, in fact, committed perjury. *Id.* The district court's "determination is sufficient if 'the court makes a finding of an obstruction of, or impediment to, justice that encompasses all of the factual predicates for a finding of perjury.'" *Id.* (quoting *United States v. Dunnigan*, 507 U.S. 87, 95 (1993)). A finding of perjury requires that the district court determine that the defendant "gave 'false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.'" *Id.* at 1038 (quoting *United States v. Taylor*, 207 F.3d 452, 454–55 (8th Cir. 2000)). In this case, the district court found that Negrete's denial of a supervisory role and knowledge of the drug transaction constituted perjury given the weight of credible contrary evidence. Given the nature of the case, Negrete's supervisory role and knowledge of the drug transaction were material issues; therefore, the dispositive issue is whether sufficient evidence of willfulness exists in the record.

The district court made its perjury findings based on inferences drawn from the jury verdict. "While it is preferable for the district court to address each element of the alleged perjury in a separate and clear finding," *Flores*, 362 F.3d at 1037, district courts are not required to go into extensive review of the evidence; a court's findings are sufficient if they clearly indicate that the court has undertaken a review of the evidence that is independent from the jury verdict. *See United States v. Kessler*, 321 F.3d 699, 703 (8th Cir. 2003) (concluding that the district court's statement that "I heard the trial testimony, and I think [it constitutes] obstruction of justice" was sufficient to demonstrate an independent finding). Here, the district court merely compared Negrete's testimony to the jury verdict and found the two to be plainly inconsistent.

The district court erred by not making an independent assessment of the record to determine if Negrete committed perjury. However, we have "repeatedly affirmed

obstruction-of-justice enhancements, despite the absence of specific findings on the elements of perjury, when the evidence of the defendant's willfulness was 'unequivocal' and 'the record left no doubt that the defendant's false testimony at trial was not the result of confusion, mistake, or faulty memory.'" *United States v. Brown*, 311 F.3d 886, 890 (8th Cir. 2002); *see also United States v. Simms*, 285 F.3d 1098, 1101 (8th Cir. 2002) (stating that "[a]lthough the district court did not specifically make a willfulness finding, the omission does not warrant a remand"); *United States v. Esparza*, 291 F.3d 1052, 1055 (8th Cir. 2002) (refusing to remand for more specific findings where the evidence in the record clearly indicated that the defendant's testimony was intentionally false).

In *Simms*, the defendant was charged with participation in a crack cocaine conspiracy. Simms testified in his own defense and "denied that he sold crack cocaine, introducing the witnesses to sources for the purposes of obtaining crack cocaine, and denied conspiring to distribute crack cocaine." *Simms*, 285 F.3d at 1101. In concluding that a remand was unnecessary, we noted that "[Simms's] denials of involvement in the crack cocaine conspiracy were 'flatly contradicted by . . . the unequivocal testimony of his former co-conspirators[.]'" *Id*. at 1102. In *Esparza*, we held that a reversal "would be a waste of time and effort" where the defendant's testimony was "plainly inconsistent with the jury's verdict." 291 F.3d at 1056.

Similarly, the record in the present case leaves no doubt that Negrete's testimony was not the result of confusion, mistake, or faulty memory. Much like the defendants in *Simms* and *Esparza*, Negrete testified that he lacked knowledge of the drug crime for which he was charged and the only purpose for this erroneous testimony could be "'to deceive the jury and obstruct the judicial process.'" *Simms*, 285 F.3d at 1101 (internal citation omitted). Under these circumstances, the district court did not err in applying the obstruction of justice enhancement.

## 2. *Sixth Amendment Apprendi Claim*

Negrete argues that the district court's application of the obstruction of justice enhancement based on the district court's finding of perjury violated his Sixth Amendment rights because the court was permitted to make the finding by a preponderance of the evidence. Negrete's argument, however, is foreclosed by *United States v. Booker*, 543 U.S. 220 (2005). It is well settled that post-*Booker*, district courts are permitted to engage in judicial factfinding, using the preponderance standard. *See e.g. Steele v. United States*, 518 F.3d 986, 989 (8th Cir. 2008) (recognizing that judicial factfinding at sentencing is "deemed constitutionally permissible under *Booker* . . .").

## III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____